# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MICHAEL DAVID CAMPBELL,

Defendant-Appellant.

FOR PUBLICATION
July 14, 2016
9:00 a.m.

No. 324708
Oakland Circuit Court
LC No. 2013-247456-FC

Before: RIORDAN, P.J., and SAAD and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Michael David Campbell, appeals by right his jury convictions of six counts of indecent exposure as a sexually delinquent person. See MCL 750.335a; MCL 750.10a. The trial court sentenced Campbell as a fourth-offense habitual offender, see MCL 769.12, to serve concurrent prison terms of 35 to 82 years for each conviction. On appeal, Campbell raises several errors that he claims warrant a new trial and argues that the trial court erred when it sentenced him under the sentencing guidelines. We conclude that there were no errors warranting a new trial, but that the trial court erred when it sentenced Campbell under the sentencing guidelines. See MCL 769.34. For these reasons, we affirm Campbell's convictions, but remand for resentencing.

## I. BASIC FACTS

The prosecution charged Campbell with six counts of indecent exposure that allegedly occurred at various times from April through August 2013. At Campbell's trial, five women testified about six incidents where Campbell stood outside their apartments, exposed himself, and masturbated. Campbell testified on his own behalf and admitted that he was present during each incident, but stated that he had an artificial penis and shook it in front of the women as a prank. He denied exposing his penis and denied masturbating.

The prosecution also presented testimony and evidence concerning several prior incidents involving Campbell. One witness testified that, in April 2003, she saw Campbell standing alongside the road as she slowed down to make a turn. He pulled down his pants, exposed his penis, and then pulled his pants up. A police officer also testified about an incident in January 2010 where Campbell was caught peeping into the windows of a private residence. Another witness similarly testified about an incident in October 2011 where he saw Campbell walking through the back of an apartment complex where the witness lived. The witness confronted

-1-

Campbell and Campbell ran. The prosecution presented evidence that Campbell was convicted of crimes arising from these incidents.

The jury rejected Campbell's proffered defense and found him guilty on each of the six counts of indecent exposure. It also found that he was a sexually delinquent person at the time he committed the crimes. Campbell now appeals in this Court.

## II. WAIVER OF RIGHT TO COUNSEL

### A. STANDARDS OF REVIEW

Campbell first argues that the trial court erred when it let him represent himself at trial. More specifically, he argues that the trial court did not adequately inform him about the risks of self-representation, failed to reaffirm his decision to waive the right to counsel at all subsequent proceedings, and never determined that he made a knowing, voluntary, and intelligent waiver of his right to counsel. Because Campbell did not properly raise these issues before the trial court, our review is for plain error affecting his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). This Court reviews de novo whether a defendant waived his Sixth Amendment right to counsel, but reviews for clear error any factual findings underlying the trial court's decision. *People v Williams*, 470 Mich 634, 640-641; 683 NW2d 597 (2004). This Court also reviews de novo whether the trial court interpreted and applied the applicable statutes and court rules. *People v Lee*, 489 Mich 289, 295; 803 NW2d 165 (2011).

### B. ANALYSIS

A person accused of a crime and facing the possibility of incarceration has a constitutional right to have the assistance of a lawyer at every critical stage of the criminal process. *Williams*, 470 Mich at 641. "The United States Constitution does not, however, force a lawyer upon a defendant; a criminal defendant may choose to waive representation and represent himself." *Id*.

When confronted with a defendant who wishes to represent himself or herself, the trial court must determine that the three requirements stated in *People v Anderson*, 398 Mich 361; 247 NW2d 857 (1976), have been met; the court must ensure defendant's request is unequivocal, that he or she "is asserting the right knowingly, intelligently, and voluntarily after being informed of the dangers and disadvantages of self-representation," and that the defendant's self-representation request "will not disrupt, unduly inconvenience, and burden the court and the administration of the court's business." *People v Willing*, 267 Mich App 208, 219; 704 NW2d 472 (2005), citing *Anderson*, 398 Mich at 367-368. Similarly, a trial court "may not permit the defendant to make an initial waiver of the right to . . . a lawyer" unless the trial court first advises him or her "of the charge, the maximum possible prison sentence . . ., any mandatory minimum sentence . . ., and the risk involved in self-representation, and" offers "the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer." MCR 6.005(D).

Trial courts must substantially comply with the requirements stated in *Anderson* and MCR 6.005(D). *People v Adkins (After Remand)*, 452 Mich 702, 726; 551 NW2d 108 (1996), overruled in part on other grounds in *Williams*, 470 Mich at 641 n 7. "Substantial compliance

requires that the court discuss the substance of both *Anderson* and MCR 6.005(D) in a short colloquy with the defendant, and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures." *Id*. at 726-727. "The nonformalistic nature of a substantial compliance rule affords the protection of a strict compliance rule with far less of the problems associated with requiring courts to engage in a word-for-word litany approach." *Id*. at 727. "[I]t is a long-held principle that courts are to make every reasonable presumption *against* the waiver of a fundamental constitutional right, including the waiver of the right to the assistance of counsel." *People v Russell*, 471 Mich 182, 188; 684 NW2d 745 (2004).

Campbell initially retained Leslie Posner as his lawyer. At a hearing held almost three months before trial, Posner informed the trial court that Campbell wanted to represent himself. At a hearing held five days later, the court asked Posner if she was ready to go to trial in three weeks, but Campbell interjected: "No, your honor. I'm ready to go with her as a stand-by or an assistant but I'm trying to do this myself." After the court informed him that Posner would take over representation if he disrupted the trial, Campbell inquired about obtaining different standby counsel. The court asked Campbell if he wanted his previous court-appointed lawyer to take over, but Campbell reasserted that he wanted to defend himself: "No your honor, I wanna represent myself . . . ." The court again warned that Campbell's standby lawyer—no matter who it was—would take over representation if Campbell disrupted the trial and then asked Campbell if he still wanted to represent himself under this arrangement. Campbell stated that he did and was "ready to go to trial." Finally, the court inquired if he had consulted with Posner about this decision and, after Campbell confirmed that he had, the court again asked if he still wanted to represent himself. Campbell responded, "yes ma'am." Thus, Campbell repeatedly and unequivocally stated that he wanted to represent himself. The trial court also asked Campbell if was freely and voluntarily asking to represent himself, and he stated, "ah—yes, your honor."

Both the prosecutor and the trial court asked Campbell a series of questions to ascertain whether he fully understood the dangers of self-representation. For example, the prosecutor asked him if he understood that he would have to follow the rules of evidence and that the lawyers had to go to law school and pass the bar exam before they could practice; Campbell related that he understood. The prosecutor also asked him if he realized that he would be held to the same standard as a lawyer and that the trial court could not assist him. Campbell again asserted that he understood and still wished to represent himself. The prosecutor questioned whether Campbell realized that "most would say" that it was "unwise" for an untrained person to represent himself in court, and Campbell stated that he knew and wanted to represent himself in any event.

As for the court, it too questioned Campbell in a way that emphasized how difficult self-representation might be. It inquired whether Campbell knew how to issue notices and subpoenas, to which Campbell replied that he did not want to call any witnesses that were not already on the witness list. The court asked Campbell if he had any exhibits to introduce, and he indicated he did not. The court questioned Campbell about the number of peremptory challenges that he was entitled to exercise and Campbell said he had 15. Campbell affirmed that he would take part in jury selection, and when asked, he was able to explain that a juror's preexisting bias was grounds for challenging the juror. He also explained the nature of a leading question and stated that he knew what hearsay meant.

"A waiver is sufficient if the defendant knows what he is doing and his choice is made with eyes open." *Williams*, 470 Mich at 642 (internal quotation marks and citation omitted). Taken together, the questions and Campbell's answers demonstrated that he knew the perils of self-representation and was willing to take the risk. Consequently, the trial court substantially complied with the requirements stated in *Anderson*.

As already described, the court and prosecutor informed Campbell of the risks of self-representation. The trial court also asked him if he knew the length of the sentence he could receive if he was convicted, and Campbell stated what the guideline range would be, even though he disagreed with the court's previous ruling that the sentencing guidelines would apply. The trial court also told Campbell that he could potentially face life in prison. But the trial court did not specifically list the charges against him. Nonetheless, the court did inquire whether Campbell knew if there were any lesser included offenses, and Campbell recognized that he could be convicted of "simple indecent exposure." Thus, there is record support that Campbell was fully aware of the charges against him. As such, the failure to specifically restate the charges at the time of his request was harmless. *Carines*, 460 Mich at 763.

The prosecutor also asked whether Campbell wanted to consult with a lawyer before making the decision, but he declined. And the trial court inquired whether he had consulted with Posner about his decision to represent himself, and Campbell responded that he had already discussed his decision with her. These discussions were sufficient to satisfy the requirements of MCR 6.005(D).

On appeal, Campbell also questions whether the trial court could rely on the prosecutor's questions in determining whether his waiver was properly made. As Campbell correctly notes, the prosecutor is an adversarial party, but the prosecutor also has "the responsibility of a minister of justice, not simply that of an advocate." *People v Jones*, 468 Mich 345, 354; 662 NW2d 376 (2003). Moreover, the prosecutor has a vested interest in ensuring that a defendant's waiver is knowingly, intelligently, and voluntarily made. Thus, we conclude that the prosecutor's questions were a proper attempt to ensure that Campbell was fully informed before making a decision to waive his right to counsel. Moreover, because the substantial compliance rule is a nonformulaic rule, the trial court could properly consider the prosecutor's questions and Campbell's responses as part of its "short colloquy" to determine whether Campbell fully understood the import of his waiver. *Adkins*, 452 Mich at 726-727.

Campbell also correctly contends that the trial court never explicitly found that his waiver request was unequivocal, knowing, and voluntary. He contends that such a finding must be on the record for a waiver to be valid, but the authorities he cites do not support this proposition. See *Russell*, 471 Mich at 187; *Anderson*, 398 Mich at 367. "Substantial compliance requires that the court discuss the substance of both *Anderson* and MCR 6.005(D) in a short colloquy with the defendant, and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures." *Adkins*, 452 Mich at 726-727. It is clear from the proceedings that the court endeavored to make the requisite determinations and that it actually found that Campbell's waiver was unequivocal, knowing, and voluntary. Consequently, we do not agree that the trial court's failure to specifically state its findings amounted to plain error warranting relief. *Carines*, 460 Mich at 763.

-4-

Campbell also contends that his is entitled to a new trial because the trial court failed to reaffirm his waiver at each subsequent proceeding. Under MCR 6.005(E), the trial court must advise a defendant who has waived the assistance of a lawyer of his or her continued right to a lawyer's assistance at subsequent proceedings:

> If a defendant has waived the assistance of a lawyer, the record of each subsequent proceeding (e.g., preliminary examination, arraignment, proceedings leading to possible revocation of youthful trainee status, hearings, trial, or sentencing) need show only that the court advised the defendant of the continuing right to a lawyer's assistance (at public expense if the defendant is indigent) and that the defendant waived that right.
>
> (1) the defendant must reaffirm that a lawyer's assistance is not wanted; or
>
> (2) if the defendant requests a lawyer and is financially unable to retain one, the court must appoint one; or
>
> (3) if the defendant wants to retain a lawyer and has the financial ability to do so, the court must allow the defendant a reasonable opportunity to retain one. [MCR 6.005(E).]

Unlike the rules relating to an initial waiver of counsel, the procedure outlined in MCR 6.005(E) does not stem from any constitutional requirement. *People v Lane*, 453 Mich 132, 139; 551 NW2d 382 (1996). And a trial court's failure to strictly comply with these requirements can be harmless error. See *id.* at 140-142.

Campbell maintains that the trial court failed to reaffirm his waiver at the three hearings subsequent to his initial waiver and also on the second and third days of trial. The first hearing after his initial waiver concerned Posner's motion to withdraw as standby counsel. At that hearing, the trial court allowed Posner to withdraw on the ground that the attorney-client relationship had broken down.[1] The court also asked a potential replacement standby attorney, Mitchell Ribitwer, to enter an appearance and talk with Campbell. The trial court inquired whether Campbell still wanted to represent himself, and he responded, "yes, your honor." Although the trial court did not explicitly remind Campbell that he had the continued right to the assistance of counsel, it is evident that the court operated on that assumption and that Campbell was aware of that right and continued to assert his right to represent himself. Further, there is no indication that the failure to explicitly remind Campbell affected the outcome of the proceeding. As such, any error was harmless. *Carines*, 460 Mich at 763; *Lane*, 453 Mich at 140-142.

At the next hearing identified by Campbell, Ribitwer appeared with Campbell and the court reminded Campbell that he had the right to be represented by an attorney at public expense if he could not afford one. The court stated that Ribitwer had informed the court that Campbell

---

[1] She further asserted that Campbell had fondled himself at one of their meetings and refused to see her.

wished to continue representing himself, but wanted Ribitwer to act as standby counsel and Campbell did not express any disagreement. This was sufficient to satisfy the requirements of MCR 6.005(E).

The final pretrial hearing occurred in September. The trial court asked and Campbell confirmed that he still wanted to represent himself. He also said he had no objection to Ribitwer acting as his standby counsel. The court explained that "the law requires that I ask you every time" and that if Campbell had "a change of mind . . . you need to let [the court] know." The trial court did not specifically advise Campbell that he had the continuing right to the assistance of a lawyer, but it was again evident that Campbell understood that to be the case given that he had accepted standby counsel and asserted his right to represent himself. It was not plain error that warranted a new trial. *Carines*, 460 Mich at 763.

On the first day of trial, the court informed Campbell that he had the right to the assistance of a lawyer, but Campbell again stated that he did not want a lawyer to represent him. He did agree to let Ribitwer to sit beside him in case he had any questions. This was sufficient to satisfy the requirements of MCR 6.005(E). Campbell contends that the trial court nevertheless failed to comply with MCR 6.005(E) on subsequent days of trial. However, MCR 6.005(E) requires the court to confirm the waiver before a subsequent "proceeding" such as a "trial." It does not require the trial court to confirm the waiver on each day of trial. There was no plain error.

The trial court substantially complied with the requirements applicable to a waiver of the right to have lawyer. It also adequately ensured that Campbell continued to waive his right at subsequent proceedings and any technical deficiencies did not amount to plain error affecting Campbell's substantial rights. *Carines*, 460 Mich at 763.

## III. SEPARATE TRIALS

### A. STANDARDS OF REVIEW

Campbell next argues that the trial court erred when it refused to bifurcate the proceedings or hold separate trials because the same jury should not be permitted to hear the evidence relating to whether he committed indecent exposure and the evidence relating to whether he was a sexually delinquent person. After Campbell began to represent himself, he raised this issue in an informal oral motion to reconsider the trial court's earlier decision to hold a single trial. This Court reviews a trial court's decision on a motion for reconsideration for an abuse of discretion. *People v Perkins*, 280 Mich App 244, 248; 760 NW2d 669 (2008). However, to the extent that Campbell challenges the trial court's decision on constitutional grounds, his challenge is unpreserved. Consequently, we shall review it for plain error. *Carines*, 460 Mich at 763.

### B. ANALYSIS

In *People v Breidenbach*, 489 Mich 1, 4; 798 NW2d 738 (2011), our Supreme Court overruled *People v Helzer*, 404 Mich 410; 273 NW2d 44 (1978), which had mandated separate juries when a defendant is charged with both a primary sexual offense and the enhancement for sexual delinquent persons. The *Breidenbach* Court held that "determinations whether separate

juries are needed should be made on a case-by-case basis in accordance with the Michigan Court Rules," and the decision to impanel separate juries is within the discretion of the trial court. *Breidenbach*, 489 Mich at 4. Under the totality of the circumstances, we conclude that the trial court did not abuse its discretion when it determined that it would be appropriate to hold a single proceeding.

The prosecution filed a notice of intent to introduce Campbell's other crimes or wrongs under MRE 404(b) for the purpose of demonstrating that the charged acts of indecent exposure were not a mistake, to show a common scheme, to rebut any claim of fabrication, and to demonstrate that he was a sexual delinquent. The rules of evidence allow the admission of evidence of other acts that can be used both to establish the underlying crime and that the defendant is a sexually delinquent person; for that reason, the admission of such evidence does not preclude joinder:

> *Helzer*'s concern regarding the high potential for automatic conviction if the same jury is allowed to hear both charges—and in the process hear evidence of a defendant's history of sexual misconduct—is not very compelling when such evidence can be, and often is, admitted anyway under the Michigan Rules of Evidence or the doctrine of chances. Specifically, MRE 404(b) provides that evidence of other "crimes, wrongs, or acts" may be admissible in order to prove a defendant's motive, intent, preparation, scheme, plan, system of doing an act, or absence of mistake or accident, among other purposes. . . . Accordingly, *Helzer*'s rule mandating separate juries, however well-intentioned, does not take into account the practical reality that evidence of a defendant's history of sexual misbehavior will often come before the jury even when the charges are severed. This reality undermines *Helzer*'s policy rationale because, as we explained in *People v Williams*, "[j]oinder of . . . other crimes cannot prejudice the defendant more than he would have been by the admissibility of the other evidence in a separate trial." Limiting instructions are the classic means by which trial courts direct juries to consider certain evidence for its proper purpose only. There is no indication that a proper limiting instruction would be any less appropriate or effective in this type of case. [*Id*. at 11-13.]

The trial court's initial order stated that one trial and one jury would be impaneled "[f]or the reasons stated by the People"; namely, because the alleged acts at issue demonstrated a single scheme, related to sexual delinquency under MCL 750.10a, and two trials would result in the presentation of the same evidence twice along with inconvenience and harassment of witnesses. The trial court similarly denied Campbell's motion for reconsideration because separate juries would have heard the same information. Given the substantial overlap in the evidence and that the trial court could adequately protect Campbell's rights with a limiting instruction concerning the evidence that was admissible only to prove that Campbell was a sexually delinquent person, we conclude that the trial court's decision to hold a single trial was within the range of reasonable and principled outcomes. See *People v Rose*, 289 Mich App 499, 524; 808 NW2d 301 (2010).

Campbell also contends that the trial court abused its discretion by failing to sever under the court rules. MCR 6.120(B) states in relevant part:

> On its own initiative, the motion of a party, or the stipulation of all parties, except as provided in subrule (C), the court may join offenses charged in two or more informations or indictments against a single defendant, or sever offenses charged in a single information or indictment against a single defendant, when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense.
>
> (1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on
>
> (a) the same conduct or transaction, or
>
> (b) a series of connected acts, or
>
> (c) a series of acts constituting parts of a single scheme or plan.
>
> (2) Other relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial.

\* \* \*

Campbell asserts that complexity of the case caused confusion of the issues and prejudice. He points out that the trial judge confused one of the victims who testified about the sexual offenses with one of the witnesses who testified about one of his past sexual offenses. But contrary to Campbell's argument, the case and the evidence was not particularly complex. That there were six charges of indecent exposure coupled with six enhancements related to Campbell's status as a sexually delinquent person did not make the issues difficult to distinguish and separate. There were six charges of indecent exposure because there were six separate instances of indecent exposure. Additionally, the drain on the parties' resources, the potential for harassment of the witnesses, and the convenience of the witnesses all weigh in favor of not bifurcating the trial. Given these considerations, the trial court selected an outcome within the range of principled outcomes. *Rose*, 289 Mich App at 524.

Campbell also argues that the trial court's decision to hold a single trial violated his constitutional rights to due process and a fair trial. Due process "imports the right to a fair trial of the issues involved in the controversy and a determination of disputed questions of fact on the basis of evidence." *Napuche v Liquor Control Comm*, 336 Mich 398, 403; 58 NW2d 118 (1953) (internal quotation marks and citation omitted). Campbell's primary argument is that the expert's testimony relating to his sexual delinquency was inadmissible with respect to the charges of indecent exposure. He points out that the court did not provide a jury instruction directing the jurors to limit the use of the expert's testimony solely to the issue of sexual delinquency. He also points out that MCL 750.335a(2)(c) provides that a person must be a sexual delinquent at the time of the indecent exposure in order to convict.

-8-

The expert's testimony was relevant to the charges of being a sexually delinquent person. Thus, the issue is whether the court handled the introduction of this evidence effectively within the context of the charges presented to the jury. Giving the jury a limiting instruction (as the court did on the use of other acts evidence), would have helped ensure that the impact of the testimony was focused on the six charges of being a sexually delinquent person. However, the evidence of Campbell's guilt—in relation to both indecent exposure and sexual delinquency—was overwhelming. All the relevant witnesses were able to identify him and describe his offending actions. Further, Campbell's defense—that he was merely engaging in vulgar pranks with a "dildo"—was entirely unpersuasive and pointedly rejected by two of the witnesses. On this record, the trial court's failure to provide a cautionary instruction on the expert's testimony was harmless. Consequently, it did not amount to plain error warranting relief. *Carines*, 460 Mich at 763.

Campbell also maintains that Posner's stipulation that separate trials were not required amounted to ineffective assistance. Posner merely conceded that that separate trials were no longer mandatory after our Supreme Court's decision in *Breidenbach*, which was an accurate statement of the law. And, after the discovery of the transcripts and the filing of supplemental briefs, Campbell established that he preserved his claim by asking the trial court to reconsider its decision to hold a single trial. On this record, Campbell has not demonstrated that Posner provided ineffective assistance that likely affected the outcome of the lower court proceedings. See *People v Gioglio (On Remand)*, 296 Mich App 12, 23; 815 NW2d 589 (2012), remanded for resentencing 493 Mich 864.

Campbell also argues that the trial court erred when it allowed the jury to learn about both the indecent exposure charges and the charges of being a sexually delinquent person. Campbell relies on *Breidenbach*, 489 Mich at 8 n 15, for this proposition, but the procedure identified in that footnote applies to situations where the trial court determines that there should be separate trials, which was not the case here. Hence, the trial court did not plainly err by not following that procedure. *Carines*, 460 Mich at 763.

The trial court did not abuse its discretion when it determined that a single proceeding was proper, and it did not deny Campbell his due process right to a fair trial. *Rose*, 289 Mich App at 524.

## IV. SENTENCING

## A. STANDARDS OF REVIEW

Campbell argues that the trial court did not have the discretion to determine a minimum and maximum sentence under the sentencing guidelines. Now that the sentencing guidelines are advisory, he maintains, trial courts are required to sentence a person convicted of indecent exposure as a sexually delinquent person to serve one day to life in prison. This Court reviews de novo the proper interpretation of statutes. *People v Davis*, 468 Mich 77, 79, 658 NW2d 800 (2003).

## B. ANALYSIS

"Our primary task in construing a statute is to discern and give effect to the intent of the Legislature," as indicated by language used in the statute. *People v Williams*, 268 Mich App 416, 425; 707 NW2d 624 (2005). If the statutory language is clear and unambiguous, then no judicial construction is necessary or permitted. *Davis*, 468 Mich at 79. "[A] statute that is unambiguous on its face can be rendered ambiguous by its interaction with and its relation to other statutes." *People v Denio*, 454 Mich 691, 699; 564 NW2d 13 (1997) (quotation marks and citations omitted).

The issue here is whether MCL 750.335a or the statutory sentencing guidelines control Campbell's sentence for indecent exposure as a sexually delinquent person. This Court previously addressed the conflict between MCL 750.335a and the sentencing guidelines and determined that the sentencing guidelines should control as the more recently enacted statute. *People v Buehler(On Remand)*, 271 Mich App 653, 657-659; 723 NW2d 578 (2006), rev'd on other grounds, 477 Mich 18 (2007). The Court in *Buehler* noted that 2005 PA 300 amended MCL 750.335a, but because the offense occurred before the effective date of the amendment, the Court expressed no opinion as to whether the guidelines or MCL 750.335a controlled after the amendment. *Id*. at 659 n 4. While reversing on other grounds, our Supreme Court agreed that the guidelines controlled over the version of MCL 750.335a then in effect and agreed that it was unnecessary to determine whether the amended statute would alter that conclusion for future offenders. *People v Buehler*, 477 Mich 18, 24-25 n 18; 727 NW2d 127 (2007).

Campbell now challenges whether the amended version of MCL 750.335a supersedes the sentencing guidelines. As our Supreme Court recognized, at the time the defendant in *Buehler* committed his crime, MCL 750.335a provided that the crime of indecent exposure as a sexually delinquent person "*may* be punishable by imprisonment for an indeterminate term, the minimum of which shall be 1 day and the maximum of which shall be life . . . ." *Buehler*, 477 Mich at 21 n 5 (emphasis added, quotation marks and citation omitted). But the 2005 amended version in effect when Campbell committed his crimes provided that the crime of indecent exposure as a sexually delinquent person "*is* punishable by imprisonment for an indeterminate term, the minimum of which is 1 day and the maximum of which is life." 2005 PA 300, § 335a(2)(c) (emphasis added).[2] Campbell argues that the change in statutory language from "may be punishable" to "is punishable" indicates that the Legislature intended the indeterminate sentence of one day to life to be a mandatory sentence, notwithstanding the sentencing guidelines.

We agree that the conflict between the statutory language provided under MCL 750.335a(2)(c) and the sentencing guidelines, MCL 769.34, must now be resolved in favor of applying MCL 750.335a(2)(c). Our Supreme Court has determined that the sentencing guidelines were unconstitutional to the extent that the guidelines required trial court's to determine a defendant's minimum sentence on the basis of facts "beyond those admitted by the defendant or found by the jury beyond a reasonable doubt . . . ." *People v Lockridge*, 498 Mich

---

[2] 2014 PA 198 also amended MCL 750.355a, but that amendment postdated Campbell's crimes and did not alter the relevant statutory language.

358, 364; 870 NW2d 502 (2015). Although the Supreme Court determined that the guidelines should still be scored by trial courts, it nevertheless held that the courts are no longer required to sentence a defendant to a minimum sentence within the range provided by the guidelines—that is, the guidelines are now merely advisory. *Id.* at 365. By contrast, the sentence provided under MCL 750.335a(2)(c) is stated in mandatory terms. Consequently, after the decision in *Lockridge*, trial courts must sentence a defendant convicted of indecent exposure as a sexually delinquent person consistent with the requirements of MCL 750.335a(2)(c).

The trial court erred when it failed to sentence Campbell consistent with MCL 750.335a(2)(c).

## V. CRIMINAL SEXUAL PSYCHOPATHIC PERSON

Campbell also argues that he qualifies as criminal sexual psychopathic person under a repealed statute and, for that reason, should not have been convicted as a sexual delinquent. He relies on the decision in *People v Griffes*, 13 Mich App 299; 164 NW2d 426 (1968). However, the court in that case recognized that the statute had been repealed, effective August 1, 1968. *Id.* at 301 n 2. Consequently, that classification no longer exists and the trial court did not plainly err by failing to apply it. *Carines*, 460 Mich at 763.

## VI. CONCLUSION

There were no errors warranting a new trial. However, the trial court erred when it sentenced Campbell under the sentencing guidelines rather than using the mandatory sentence provided under MCL 750.335a(2)(c). Accordingly, we vacate his sentences and remand this case to the trial court for resentencing consistent with this opinion.

Affirmed in part, vacated in part, and remanded for resentencing. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Henry William Saad
/s/ Michael J. Kelly

-11-