# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

V

DAVID JACK RUSSO,

Defendant-Appellant.

UNPUBLISHED
August 31, 2017

No. 331210
Macomb Circuit Court
LC No. 2015-000513-FH

Before: SHAPIRO, P.J., and GLEICHER and O'BRIEN, JJ.

PER CURIAM.

Following a jury trial in which he represented himself, defendant was convicted of aggravated stalking, MCL 750.411i, and malicious use of telecommunications services, MCL 750.540e.[1] On appeal, defendant argues that the circuit court failed to substantially comply with the requirements governing waiver of trial counsel without which a waiver of the right to counsel is not effective. For the reasons set forth in this opinion we agree, vacate defendant's convictions, and remand for new trial.

A criminal defendant who faces incarceration has a constitutional right to counsel at all critical stages of the criminal process. *People v Campbell*, 316 Mich App 279, 283; 894 NW2d 72 (2016).[2] Upon a defendant's request to proceed pro se, the trial court must determine whether

---

[1] Defendant's conviction arose out of harassing and threatening telephone calls he made to his parents, at their home in Michigan, while he was living at their condominium in Florida. According to a forensic competency evaluation, defendant suffers from bipolar disorder as well as other psychiatric illnesses, and has been hospitalized on multiple occasions. The stalking charges were filed because defendant would call his parents' home and place of business, as often as 50 times a day, and fill up their answering machine with harassing and sometimes threatening messages. He rebuffed his parents' request that he discontinue this practice.

[2] The United States Constitution, US Const, Am VI, implicitly guarantees, and the Michigan Constitution, Const 1963, art 1, § 13, and statute, MCL 763.1, expressly guarantee a criminal

-1-

the request is unequivocal, whether the defendant is knowingly, intelligently, and voluntarily waiving the right to legal counsel, and whether the defendant's self-representation will disrupt, unduly inconvenience, and otherwise burden the court and the administration of justice. *People v Anderson*, 398 Mich 361, 367-368; 247 NW2d 857 (1976). In addition, MCR 6.005(D) provides, in relevant part:

> The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first

> (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation.

"[I]f the trial court fails to substantially comply with the requirements in *Anderson* and the court rule, then defendant has not effectively waived his Sixth Amendment right to the assistance of counsel." *People v Russell*, 471 Mich 182, 191-192; 684 NW2d 745 (2004). "Substantial compliance requires that the court discuss the substance of both *Anderson* and MCR 6.005(D) in a short colloquy with the defendant, and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures." *Russell*, 471 Mich at 191 (citation omitted).

The trial court failed to comply with the court rule and with the constitutional requirements set forth in *Anderson*. First, it was the trial court and not defendant that suggested that he proceed without counsel. Second, the trial court did not advise defendant of the charges against him and the maximum sentences that could be imposed. Third, the court did not adequately advise defendant of the risks involved in self-representation. Finally, the court failed to adequately consider whether defendant's mental state, while adequate to stand trial and assist in his defense, was adequate for him to waive counsel, and it never made a finding that defendant's waiver was knowing, intelligent and voluntary.

On April 13, 2015 at a pre-trial hearing, defendant's appointed counsel, Matthew Kolodziejski, told the court that there had been a breakdown in the attorney-client relationship and that both he and defendant wished to terminate his representation. The trial court granted the motion and assigned new counsel, Esther Igwe.

At the next hearing, on April 27, 2015, the prosecutor recommended that defendant be referred for a competency examination because it was discovered that he suffered from bipolar disorder. Igwe agreed and the court ordered the evaluation. The parties next appeared on June 15, 2015, by which time defendant had filed his own motion to dismiss Igwe because she had not yet provided him with transcripts of the preliminary examination. The trial court directed Igwe to provide defendant with the transcripts and denied defendant's motion to dismiss counsel.

On July 1, 2015, the parties again appeared before the court. Defendant insisted that the preliminary examination transcript was inaccurate or falsified, and that he wanted to listen to the

defendant's right to self-representation. *People v Williams*, 470 Mich 634, 641-642; 683 NW2d 597 (2004).

reporter's tapes of the preliminary examination. The court directed that defendant, with counsel, listen to the tapes in the courthouse. After some time, counsel and defendant returned to the courtroom and counsel informed the court that defendant listened to one tape, concluded it was inaccurate, and refused to listen to the rest.

The next hearing occurred on August 12, 2015. By then the forensic report had been received. It concluded that defendant understood the charges against him, and could assist his lawyer in his trial. However, the forensic report did not address whether defendant understood the risks of self-representation, and whether he had the mental capacity to conduct his own trial defense. Igwe advised the court that she did not agree with the report's conclusion and that based on her interactions with defendant, she did not believe he was competent to stand trial. She then advised the court that defendant no longer wanted her to serve as counsel. When the court asked defendant, "What's the plan?" defendant continued to insist at length that the preliminary examination transcripts and tapes were inaccurate. Eventually, the court asked defendant, "Do you want this attorney?" He responded, "No, I do not" and then addressing Igwe, the court stated, "Okay, goodbye, thank you. You're excused." Shortly thereafter, the court, without a request from defendant, asked if he planned to represent himself:

> *THE COURT.* I'm ready to start your trial, are you?
>
> [*DEFENDANT*]. Yes.
>
> *THE COURT.* You're going to represent yourself?
>
> [*DEFENDANT*]. Yes.
>
> *THE COURT.* Great. As soon as I finish this one I'm at right now, we're going to start your trial. Which will put us probably at about Tuesday. So you get some clothes, and I'm going to have an attorney who's going to sit next to you to advise you in case you need to consult with somebody with a license, and we're going to try your case on Tuesday. That's it.

The prosecutor then advised the court that defendant did have a significant mental health history, that he believed that defense counsel's view that defendant was not competent was "not far off," and that he wanted to make sure that defendant did in fact want to represent himself.

The court then stated:

> *THE COURT.* So we got all these people who are concerned about you because your behavior apparently is not really conforming to what society would dictate to be normal. And now, you know, I can't find an attorney that appeases you because you think there is some conspiracy to alter transcripts and everything else. What do you suggest that we do? All we want to do is help you here.
>
> [*DEFENDANT*]. Who better than I to help myself? No one can help me except myself.
>
> *THE COURT.* Well, what's the plan?

-3-

> [*DEFENDANT*].  I think we should stick to what we agreed upon.
>
> *THE COURT*.  You're ready to represent yourself through a trial.
>
> [*DEFENDANT*].  Yes, I am.
>
> *THE COURT*.  Okay, so now it's important that you understand the rules of evidence.  So make sure you get those.  And make sure that you understand the court procedure, how to pick a jury, the appropriate question to be asking and how a court proceeds through a trial.  Because you're representing yourself, you still have to follow the rules of evidence.  Okay?
>
> *[DEFENDANT]*: Okay.

The court seemingly accepted defendant's "Okay" as dispositive, and conducted no further inquiry into defendant's understanding of the risks and demands of proceeding without representation.

Another pretrial hearing was conducted on August 18, 2015, at which time advisory counsel was present with defendant.  The court asked defendant if he had familiarized himself with the rules of procedure and evidence, and defendant advised the court that he had not been allowed access to the jail law library and that he did not want advisory counsel.  The court then advised defendant about the need for advisory counsel and the risks of proceeding without one.  When defendant stated that he could proceed without advisory counsel, the court stated, "[B]ased on what I've read and what I've heard, I'm not sure."  Advisory counsel then advised the court that when he introduced himself to defendant, defendant laughed and walked away.  He further advised the court that if he was representing defendant, he would file a motion to quash and that after reviewing the psychiatric evaluation he was concerned about defendant's competency to stand trial, and believed that another evaluation was in order.  The prosecutor concurred with the request for another evaluation noting that defendant "is not appreciating the nature or the possible liability he would be exposed to."  At that point, the court directed defendant and advisory counsel to discuss the matter in the jury room.  When the hearing resumed, defense counsel stated without further explanation that he "had a better idea of his mental condition."  The court and counsel then began to discuss trial dates.

The trial court clearly did not comply with MCR 6.005(D).  First, at the time of defendant's initial waiver on August 12, 2015, the court failed to inform defendant of the charges against him and the possible punishment.  The court again failed to do so at the August 18, 2015 hearing.  Defendant's failure to understand what sentence he might face was evidenced on the first day of trial when defendant stated his belief that the maximum punishment he was facing was probation.  At that point, the court corrected and advised him that the charge allowed for imprisonment for up to five years.  However, the court rule requires that defendant be advised of the maximum penalty at the time of the initial waiver.  Here, the court did not do so until a month later, moments before the jury venire was brought into the courtroom.

Second, the trial court did not substantially comply with the requirement that it should advise defendant of the "risk involved in self-representation," and failed to ever make a finding that defendant's waiver was knowing, intelligent and voluntary.  More broadly, it is also evident

-4-

that the trial court failed to "engage, on the record, in a methodical assessment of the wisdom of self-representation by the defendant." *People v Hicks*, 259 Mich App 518, 523; 675 NW2d 599 (2003) (citation omitted). The court did not follow *Anderson*'s directive that "[t]he trial court must make the *pro se* defendant aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with open eyes." *Anderson*, 398 Mich at 368.

Finally, a "[d]efendant's competence is a pertinent consideration in making [a] determination" that the defendant was aware of "the dangers and disadvantages of self-representation." *Anderson*, 398 Mich at 368. In *Indiana v Edwards*, 554 US 164; 128 S Ct 2379; 179 L Ed 2d 345 (2008), the United States Supreme Court distinguished between a defendant's competency to stand trial and his mental capacity to conduct his trial defense without counsel. The different competency standard requires different inquiries. A defendant may not waive his right to counsel if his mental health incompetency renders him unable to understand the proceeding and make a knowing, intelligent, and voluntary waiver. *Godinez v Moran*, 509 US 389, 401 n 12; 113 S Ct 2680; 125 L Ed 2d 321 (1993). However, "[i]n certain instances, an individual may well be able to satisfy [the] mental competence standard [to stand trial] for he will be able to work with counsel at trial, yet at the same time he may be unable to carry out the basic tasks needed to present his own defense without the help of counsel." *Edwards*, 554 US at 175-176. The *Edwards* Court recognized that "[d]isorganized thinking, deficits in sustaining attention and concentration, impaired excessive abilities, anxiety, and other common symptoms of severe mental illness can impair the defendant's ability to play the significantly expanded role required for self-representation even if he can play the lesser role of represented defendant" *Id*. at 176 (citation omitted).

Although the forensic examiner determined that defendant was competent to stand trial, it did not determine whether defendant was able "to carry out the basic tasks needed to present his own defense without the help of counsel." *Edwards*, 554 US at 175-176. Appointed counsel, standby counsel, and the prosecutor all made clear their views that despite the forensic report they had grave concerns about defendant's competency. And although each suggested that a second psychological evaluation was needed, the court did not order one nor rule on the request.

Because we conclude that the trial court did not substantially comply with the requirements governing waiver of the right to counsel, we vacate defendant's convictions and remand for a new trial. We do not retain jurisdiction.

Reversed.


/s/ Douglas B. Shapiro
/s/ Elizabeth L. Gleicher
/s/ Colleen A. O'Brien