# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 15, 2018

Plaintiff-Appellee,

v

No. 334511
Oakland Circuit Court
LC No. 2015-256549-FH

TANIA CHRIS ALEXANDER,

Defendant-Appellant.

Before: TALBOT, C.J., and METER and TUKEL, JJ.

PER CURIAM.

Tania Chris Alexander appeals as of right her jury trial convictions of fourth-degree fleeing and eluding[1] and failure to stop at the scene of a property damage accident.[2] Alexander was sentenced to 180 days in jail for fleeing and eluding and 90 days in jail for failing to stop at the scene of a property damage accident. We affirm.

On appeal, Alexander argues through counsel that her waiver of counsel in the lower court proceedings was not knowing, intelligent, and voluntary. Alexander also filed a Standard 4 brief pursuant to Administrative Order 2004-6, Standard 4, arguing that her waiver was not knowing and voluntary, that she was denied assistance of counsel at the preliminary examination, that the prosecutor engaged in misconduct during closing argument, and that she received ineffective assistance of counsel when her advisory attorney did not object or counsel her regarding the prosecutor's closing argument. We disagree.

## I. WAIVER OF COUNSEL

In order to preserve a challenge to the validity of a waiver of counsel, the defendant must properly raise the issue in the trial court.[3] Alexander failed to raise this issue below. Thus, it is not preserved for appellate review and our review is limited to plain error affecting substantial

---

[1] MCL 257.602a(2).

[2] MCL 257.618.

[3] *People v Campbell*, 316 Mich App 279, 283; 894 NW2d 72 (2016).

rights.[4]  This Court generally reviews a trial court's findings of fact regarding a defendant's waiver of counsel for clear error; however, a determination regarding the meaning of "knowing and intelligent" is a question of law reviewed de novo.[5]

A defendant's right to self-representation is provided by the Michigan Constitution, as well as by statute.[6]  The Sixth Amendment of the United States Constitution also implicitly guarantees the right to self-representation.[7]  However, several requirements must be met before a defendant may proceed *in propria persona*:

> To invoke the right of self-representation: (1) a defendant must make an unequivocal request to represent himself, (2) the trial court must determine that the choice to proceed without counsel is knowing, intelligent, and voluntary, and (3) the trial court must "determine that the defendant's acting as his own counsel will not disrupt, unduly inconvenience and burden the court and the administration of the court's business."[8]

Whether a waiver is knowing and voluntary is a fact-intensive inquiry that requires review of the entire record.[9]  "A waiver is sufficient if the defendant knows what he is doing and his choice is made with eyes open."[10]  Every reasonable presumption should be made against waiver.[11]

The trial court must also substantially comply with MCR 6.005.[12]  MCR 6.005(D) provides that the court cannot accept a defendant's initial waiver of the right to counsel without first

> (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and

---

[4] *Id*.

[5] *People v Williams*, 470 Mich 634, 640; 683 NW2d 597 (2004).

[6] *People v Dunigan*, 299 Mich App 579, 587; 831 NW2d 243 (2013), citing Const 1963, art 1, § 13 and MCL 763.1.

[7] *Dunigan*, 299 Mich App at 587.

[8] *Id*., quoting *People v Anderson*, 398 Mich 361, 367-368; 247 NW2d 857 (1976).

[9] *Williams*, 470 Mich at 640.

[10] *Campbell*, 316 Mich App at 286 (quotation marks and citation omitted).

[11] *Williams*, 470 Mich at 641.

[12] *People v Campbell*, 316 Mich App at 284.

(2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

Failure to substantially comply with these requirements renders a defendant's waiver of counsel ineffective.[13]

## A. DISTRICT COURT PROCEEDINGS

In the district court, Alexander was initially appointed Maxwell M. Manoogian as counsel. However, after being threatened with a grievance if he did not take actions Alexander deemed prudent, Manoogian moved to withdraw as Alexander's counsel. Alexander had no objection to Manoogian's withdrawal. After much discussion, the district court asked Alexander to clarify whether she wanted an appointed attorney. Alexander answered, "I have a right to not only just representation, I also have the right to assistance[.]" The district court asked Alexander what she thought the difference was between representation and the type of assistance of counsel that she was requesting, and she said: "In my mind, an attorney representing me would be up here speaking on my behalf, as opposed to me speaking for myself. Assistance and advice of counsel would be me every move, every motion, my thoughts I would run through my counsel[.]" The district court agreed to have the circuit court appoint another attorney in an "advisory capacity[.]" After ensuring that Alexander was agreeable to adjourning the preliminary examination, the district court inquired as to why Alexander did not want someone who understood the court system and law to represent her. Alexander responded, "Because I feel like I speak up for myself . . . ." The court, again, asked,

> *The Court*: And let me ask you one more time, you do not want an attorney to represent you; is that correct?
>
> *Tania Alexander*: Correct. Just for--
>
> *The Court*: You only want an attorney to consult with?
>
> *Tania Alexander*: Yes, Your Honor.
>
> *The Court*: All right. Has anybody promised you anything or threatened you to get you to waive your right to an attorney - -
>
> *Tania Alexander*: No.

However, after the matter was adjourned, the district court learned that the circuit court was unwilling to appoint counsel "just to consult" at the preliminary examination. After recalling the case, the district court agreed to appoint advisory counsel as a courtesy in the district court proceedings only, but explained that it could not do so with respect to the circuit

---

[13] *People v Russell*, 471 Mich 182, 191-192; 684 NW2d 745 (2004).

court proceedings. Alexander asserted that the district court was not acknowledging MCR 6.005, which she alleged provided her with the right to "assistance" of counsel. The court reiterated that Alexander waived her right to counsel knowingly, voluntarily, and willingly, but still appointed an attorney because Alexander kept "throwing this back as if everybody's trying to deny you . . . an essential right to counsel."

Another hearing was held in the district court on October 19, 2015, wherein Alexander's second appointed attorney, Charles Farrar, moved to withdraw because Alexander once again declined a court-appointed attorney. In response to Farrar's motion, Alexander stated that she was appearing "in propria persona and without the benefit of counsel," and that she had no objection to Farrar's request to withdraw. However, she again argued that she was entitled to the assistance and advice of counsel as a constitutional right, pursuant to MCR 6.005. The district court argued with Alexander to the point of warning that she would be held in contempt if she continued to interrupt. The court asked Alexander "bottom line" whether she wanted the court to allow Farrar to withdraw so she could represent herself:

> *The Court*: . . . "[D]o you want counsel to represent you; this is a yes or a no?
>
> *Tania Alexander*: I want the advice and assistance of counsel, Your Honor.
>
> *The Court*: Do you want an attorney to represent you; that's a yes or a no.
>
> *Tania Alexander*: I'm very -- I'm --
>
> *The Court*: If you -- if [you] say yes, then he is going to represent you. If you say no, then you're declining court appointed counsel. I just need to know which one you want[.]
>
> *Tania Alexander*: If that's all the Court is willing to do, then no, Your Honor, I'm appearing in propria persona.

The district court also addressed several motions Alexander had filed, including a motion for a bill of particulars. With respect to that motion, the district court observed that Alexander made a number of arguments concerning capital crimes and concluded: "[T]hat's the problem of going forward in pro per without assistance -- or without having an attorney represent you. This is not a capital case. . . . This is a felony. This is a fleeing and eluding; a two-year felony." The district court then reviewed the felony information and, with respect to the second count—failing to stop at the scene of a property damage accident—said, "That was a 90-day misdemeanor[.]" After the court denied her motion, Alexander stated that she wanted a preliminary examination, which the court scheduled for a later date.

At the outset of the preliminary examination, Alexander again announced her appearance as "in propria persona, without the benefit of counsel." The district court stated:

[L]et me just make sure that this record is very clear. . . . Ms. Alexander has chosen not to have counsel appointed to her. We've been through that. The record is -- is replete with those discussions, so I will just leave that as -- as is."

Alexander objected and said, "-- I did not waive --," but the court cut her off, said that it was just making a record, and told her not to interrupt. Alexander represented herself throughout the preliminary examination, including cross-examination of Officer Peter Matejcik.

Alexander mistakenly argued that she had a right to standby counsel based on the Sixth Amendment and the "assistance of counsel" language included in MCR 6.005. "A defendant who asserts his right to self-representation has no absolute entitlement to standby counsel. As the Michigan Supreme Court explained in *People v Dennany*,[14] '[A] defendant has a constitutional entitlement to represent himself or to be represented by counsel–but not both.' "[15] Two attorneys were appointed to represent Alexander, and both withdrew from representation when Alexander insisted that she wanted to represent herself. Although her responses to the court's repeated inquiries as to whether she desired counsel were often equivocal on their face, she made it clear that she wanted to represent herself and did not want to be represented by counsel. Alexander informed the court that she preferred self-representation because she could "speak up for herself." Even after the district court explained that many of her legal arguments were fundamentally flawed, Alexander continued to insist on self-representation. The district court also reviewed the charges with Alexander in connection with her motion for a bill of particulars, as well as the maximum penalty associated with the charges. Although it appears that the various altercations between the court and Alexander seemingly disrupted and burdened the court, the district court allowed Alexander to proceed *in propria persona*, and the court was eventually able to dispose of Alexander's motions, hold a preliminary examination, and bind the matter over to the circuit court for trial. The district court substantially complied with MCR 6.005(D) and found that Alexander's waiver was knowing and voluntary. In light of the above, the district court's decision did not amount to plain error warranting relief.

In her Standard 4 brief, Alexander specifically argues that she was denied the right to "assistance of [c]ounsel and/or right to consult" during the preliminary examination. We disagree. Alexander relies on the prosecutor's later remarks in the circuit court that he did not "know if there was a valid waiver of counsel" on the day of the preliminary examination, and his opinion that the waiver procedure was "inartfully done" by the district court judge. But as explained above, Alexander effectively waived her right to counsel in the district court prior to the preliminary examination. Moreover, when the prosecutor commented regarding the adequacy of Alexander's waiver, the circuit court offered to remand the case to the district court so Alexander could be represented by counsel at a new preliminary examination. In response, Alexander continued to assert that she wanted to represent herself and said remand would have

---

[14] *People v Dennany*, 445 Mich 412, 442; 519 NW2d 128 (1994).

[15] *People v Kevorkian*, 248 Mich App 373, 422; 639 NW2d 291 (2002) (first citation omitted).

been "futile." Alexander cannot decline remand for a preliminary examination with appointed counsel and then argue on appeal that she was deprived counsel at the preliminary examination.[16]

Furthermore, even if Alexander had not effectively waived her right to counsel at the preliminary examination and had indeed been deprived of the right to counsel, the Michigan Supreme Court has recently held that the absence of counsel at a preliminary examination is subject to review for harmless error.[17] On this record, we have no difficulty concluding that Alexander's lack of counsel at the preliminary examination was harmless. Unlike the defendant in *Lewis*, Alexander was present for and participated in the entirety of the preliminary examination, and even cross-examined the prosecutor's only witness. An advisory attorney was later appointed in the circuit court, and Alexander was free to consult with that attorney regarding impeaching Officer Matejcik at trial with his preliminary examination testimony. It is apparent that had Alexander been appointed counsel for the preliminary examination, she would have insisted that such counsel was advisory only and proceeded to represent herself. Indeed, she was adamant that she wanted to represent herself throughout the entirety of these proceedings. Thus, even if we found that Alexander did not sufficiently waive counsel for the preliminary examination and that she was denied the right to counsel at that critical stage, any resulting error was harmless.

## B. CIRCUIT COURT PROCEEDINGS

In the circuit court, Alexander filed a motion "to appoint assistance of counsel in defendants [sic] criminal prosecution pursuant to the Sixth Amendment." In her motion, she requested counsel for the "limited purpose" of consulting, and relied upon MCR 6.005(D). The court granted Alexander's motion and appointed Melissa Sue Krauskopf as Alexander's advisory counsel.

Alexander filed various motions thereafter, indicating that she was acting *in propria persona* "with the benefit of standby counsel," including a motion to quash the bindover and dismiss the complaint. The circuit court held a hearing on this motion, where, once again, Alexander waived her right to counsel:

> *The Court*: Ms. Alexander, you understand that you have a right to -- an absolute right to an attorney to represent you in this matter?
>
> *Ms. Alexander*: Yes.
>
> *The Court*: We've been through this before and you've indicated you wish to waive your right to an attorney; is that correct?

---

[16] See *People v McCray*, 210 Mich App 9, 14; 533 NW2d 359 (1995) ("[A] party cannot request a certain action of the trial court and then argue on appeal that the action was error.").

[17] *People v Lewis*, 501 Mich 1, 9-10; 903 NW2d 816 (2017).

*Ms. Alexander*:  Yes.

*The Court*:  And represent yourself?

*Ms. Alexander*:  Yes.

The court had a similar interaction with Alexander at another hearing concerning several additional motions that Alexander filed *in propria persona*:

*The Court*:  Ms. Alexander.  Do you understand my question?  Do you want to represent yourself or do you want Ms. Krauskopf to be your attorney and file motions on your behalf?  You have indicated on this record you are representing yourself because you are in pro per.  That's all I'm askin'.

[*Alexander*]:  And I've indicated on the record your Honor that I can represent myself with the assistance of Counsel.

*The Court*:  You're representing yourself.  Thank you, ma'am. . . .

At this hearing, as noted earlier, the prosecutor expressed doubt concerning whether Alexander had properly waived her right to counsel at the preliminary examination.  However, when the court asked Alexander if she wanted a remand for the purpose of holding a new preliminary examination with the representation of counsel, she said remand to the district court with representation "would be wonderful except the fact that it would be futile."

On the first day of trial, Alexander continued to assert that she desired to represent herself.  The Court agreed that she was free to do so, but cautioned: "I expect that you're going to deal in this case the same way every other lawyer does.  I hold you to the same standard I hold Ms. Krauskopf [standby counsel] and [the prosecutor] to."  When the jury pool entered the courtroom, the court advised the prospective jurors that Alexander was representing herself with her "advisory counsel," Krauskopf, and Alexander told the jury that Krauskopf was present for "assisting purposes, only."  Alexander was advised of her right to retain counsel or have counsel appointed before trial resumed on the second day, and Alexander wished to continue representing herself.

Based on the proceedings that took place prior to trial, it is clear that Alexander's waiver of counsel in the circuit court was also sufficient.  She filed a motion specifically asking for advisory counsel, which the circuit court granted.  At every hearing prior to trial, she reiterated that she wanted to represent herself.  At both days of trial, she again said she was appearing *in propria persona* and that Krauskopf was only present in an advisory manner.  The circuit court reminded her of her right to counsel, chosen or appointed, before each session of trial.  Thus, Alexander sufficiently waived her right to counsel, and the circuit court did not err by accepting her waiver.  Although Alexander argues that her waiver was not unequivocal, for the reasons already explained, we disagree.  Alexander consistently asserted her right to self-representation and insisted that she desired to proceed *in propria persona*, with the limited benefit of advisory counsel, which was in fact provided.  Alexander is not entitled to appellate relief on this basis.

## II.  PROSECUTORIAL MISCONDUCT

Next, Alexander argues in her Standard 4 brief that she was denied due process of law on the basis of statements made by the prosecutor during closing argument.  We disagree.

A defendant must timely and specifically object to improper conduct by the prosecutor during trial, and request a curative instruction, to preserve a claim for prosecutorial misconduct.[18] Because Alexander failed to object to the remarks that serve as the basis for her claim of error, this issue is unpreserved, and this Court's review is limited to plain error.[19]  "To avoid forfeiture under the plain error rule, three requirements must be met[:] (1) an error must have occurred; (2) the error was plain; (3) and the plain error affected substantial rights, i.e., the defendant was prejudiced (the defendant generally must show that the error affected the outcome of the lower court proceedings)."[20]  If the defendant can satisfy this standard, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when the error seriously affected the fairness, integrity, or public reputation of judicial proceedings."[21]

"Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial."[22]  This Court reviews prosecutorial misconduct "on a case-by-case basis by examining the record and evaluating the remarks in context . . . ."[23]  "The propriety of a prosecutor's remarks depends on all the facts of the case."[24]  The prosecutor's comments must be read as a whole, and evaluated by this Court in light of the defendant's arguments, and the relationship the comments bear to the admitted evidence.[25]  Prosecutors "are accorded great latitude regarding their arguments and conduct," and they are "free to argue the evidence and all reasonable inferences from the evidence as it relates to [their] theory of the case."[26]  The prosecution "need not confine argument to the blandest possible terms."[27]

---

[18] *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010).

[19] *People v Barber*, 255 Mich App 288, 296; 659 NW2d 674 (2003).

[20] *Id*.

[21] *Id*.

[22] *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007).

[23] *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010) (quotation marks and citation omitted).

[24] *People v Rodriguez*, 251 Mich App 10, 30; 650 NW2d 96 (2002).

[25] *Id*.

[26] *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (quotation marks and citations omitted) (alteration in original).

[27] *Dobek*, 274 Mich App at 66.

During closing argument, the prosecutor told the jury that it could only consider the legal defenses included in the court's instructions. He went on to explain that there was no defense of omission, mistake, necessity, or medical emergency for a charge of fleeing and eluding. The prosecutor noted that a legal defense justifies one's actions, while an excuse merely explains those actions. He then argued that Alexander's excuse for fleeing and eluding—that her mother was in medical distress—was "a hoax." On appeal, Alexander contends that these statements misled the jury and conflicted with jury instructions. However, Alexander has failed to make any effort to explain how the prosecutor's closing argument was misleading or in conflict with the court's jury instructions and, thus, has not demonstrated that the prosecutor's closing argument constituted plain error. Importantly, Alexander emphasized in her opening statement that she was driving her ailing mother to the doctor at the time of the events giving rise to this case and called a witness to testify regarding her mother's health that morning. The prosecutor was simply presenting his theory of the case to the jury and responding to Alexander's defense.

Additionally, Alexander has not shown that her substantial rights were affected by the prosecutor's closing argument. The prosecutor presented ample evidence establishing that Alexander was guilty of the charged offenses beyond a reasonable doubt. An individual is guilty of fourth-degree fleeing and eluding when:

> A driver of a motor vehicle who is given by hand, voice, emergency light, or siren a visual or audible signal by a police or conservation officer, acting in the lawful performance of his or her duty, directing the driver to bring his or her motor vehicle to a stop shall not willfully fail to obey that direction by increasing the speed of the motor vehicle, extinguishing the lights of the motor vehicle, or otherwise attempting to flee or elude the officer. This subsection does not apply unless the police or conservation officer giving the signal is in uniform and the officer's vehicle is identified as an official police or department of natural resources vehicle.[28]

Three police officers testified regarding various instances in which Alexander willfully failed to comply with directives to pull over. Officer Matejcik signaled Alexander with his overhead lights, siren, public address system, and verbally. Alexander did not stop. Officers Aaron Sparks and Anthony Turner also signaled Alexander to stop with their lights and siren, to no avail. When Alexander finally pulled over—after having been boxed in by two police vehicles—she again attempted to accelerate, causing the officers to issue more verbal orders to stop. All three officers were dressed in uniform and riding in fully-marked police cars.

The statute regarding failure to stop at the scene of a property damage accident provides that it is a misdemeanor if:

> The driver of a vehicle who knows or who has reason to believe that he has been involved in an accident upon public or private property that is open to travel by the public shall immediately stop his or her vehicle at the scene of the accident

---

[28] MCL 257.602a(1).

and shall remain there until the requirements of section 619[29] are fulfilled or immediately report the accident to the nearest or most convenient police agency or officer to fulfill the requirements of section 619(a) and (b) if there is a reasonable and honest belief that remaining at the scene will result in further harm. The stop shall be made without obstructing traffic more than is necessary.[30]

William McAlister, Jr., testified that Alexander continued driving after rear-ending his vehicle. The damage to his car was consistent with the collision he described. Alexander called 911 twice, but did not report that she had been involved in an accident in either call. Rather, she just said that the police were following her and she was trying to get medical attention for her mother. In light of the overwhelming evidence of Alexander's guilt, it is improbable that any allegedly improper remark by the prosecutor in closing argument affected the outcome of the proceedings.

### III. INEFFECTIVE ASSISTANCE OF ADVISORY COUNSEL

Lastly, Alexander argues in her Standard 4 Brief that she was denied the effective assistance of counsel when her advisory trial counsel failed to instruct her to object to the prosecutor's closing argument. We disagree.

"When a defendant did not move in the trial court for a new trial or an evidentiary hearing, this Court's review is limited to mistakes apparent from the record."[31] Claims of ineffective assistance of counsel are mixed questions of law and fact.[32] "A judge must first find the facts, then must decide whether those facts establish a violation of the defendant's

---

[29] MCL 257.619 requires an individual who knows or has reason to believe that he or she was involved in an accident to:

(a) Give his or her name and address, and the registration number of the vehicle he or she is operating, including the name and address of the owner, to a police officer, the individual struck, or the driver or occupants of the vehicle with which he or she has collided.

(b) Exhibit his or her operator's or chauffeur's license to a police officer, individual struck, or the driver or occupants of the vehicle with which he or she has collided.

(c) Render to any individual injured in the accident reasonable assistance in securing medical aid or arrange for or provide transportation to any injured individual. [MCL 257.619.]

[30] MCL 257.618(1) (citation omitted).

[31] *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

[32] *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011).

constitutional right to the effective assistance of counsel."[33] This Court reviews the trial court's findings of fact for clear error, and reviews questions of constitutional law de novo.[34] "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake."[35]

To establish ineffective assistance of counsel, a defendant must show: "(1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. . . . A defendant must also show that the result that did occur was fundamentally unfair or unreliable."[36] Effective assistance of counsel is "strongly presumed."[37] A defendant claiming to have been denied the effective assistance of counsel must establish the factual predicate of his or her claim.[38]

Alexander appeared at trial *in propria persona*, after repeated arguments with the court regarding her request for the "assistance" of counsel or counsel to "consult with." However, "[a] defendant who asserts [the] right to self-representation has no absolute entitlement to standby counsel."[39] Like Alexander, the defendant in *People v Kevorkian*, claimed that his standby counsel did too little.[40] In rejecting the defendant's claim of error in *Kevorkian*, this Court reasoned: "[A] defendant who chooses to represent himself does so at his own peril. With no constitutional right to [standby counsel], a defendant proceeding in propria persona has no basis to claim that [standby counsel] must abide by constitutional standards," and " 'generally cannot prove standby counsel was ineffective.' "[41] The defendant in *Kevorkian* represented himself with standby counsel "in reality as well as in name."[42] Because the defendant represented himself, he could not blame his standby counsel for his conviction.[43] Standby counsel was not acting as counsel within the meaning of the Sixth Amendment and, therefore, could not be held to the standards of effective assistance required of trial attorneys.[44] Moreover, this Court found that the standby counsel's performance did not fall below an objective standard of

---

[33] *Id.* (quotation marks and citation omitted).

[34] *Id.*

[35] *Id.*

[36] *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012).

[37] *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012).

[38] *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

[39] *Kevorkian*, 248 Mich App at 422.

[40] *Id.* at 424.

[41] *Id.* at 424-425 (citation omitted).

[42] *Id.* at 426.

[43] *Id.*

[44] *Id.* at 427.

reasonableness, and the defendant did not show that but for the standby counsel's alleged errors, the result of the proceedings would have been different.[45]

The same holds true in this case. Krauskopf was not acting within the meaning of the Sixth Amendment when she appeared as advisory counsel to Alexander at trial. Thus, she is not held to the same standard of effective assistance of counsel that is required for trial attorneys.[46] In any event, Alexander's argument also lacks merit because, even if Krauskopf had been representing Alexander in the traditional sense, failure to make a meritless objection does not constitute ineffective assistance of counsel.[47]

Affirmed.

/s/ Michael J. Talbot
/s/ Patrick M. Meter
/s/ Jonathan Tukel

---

[45] *Id*.

[46] *Id*. at 426-427.

[47] *People v Pinkney*, 316 Mich App 450, 473; 891 NW2d 891 (2016).