# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

---

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

BERNARD ANTOINE HARDRICK,

   Defendant-Appellant.

UNPUBLISHED
December 19, 2017


No. 333568
Wayne Circuit Court
LC No. 15-008119-01-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

BERNARD ANTOINE HARDRICK,

   Defendant-Appellant.

No. 333898
Wayne Circuit Court
LC No. 15-007481-01-FH

---

Before: METER, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

  In Docket No. 333568, defendant appeals his convictions of forgery of a document affecting real property, MCL 750.248b, uttering and publishing a document affecting real property, MCL 750.249b, and two counts of using false pretenses to obtain money in an amount of $1,000 or more, but less than $20,000, MCL 750.218(4)(a). In Docket No. 333898, defendant appeals his convictions of conducting a criminal enterprise (racketeering), MCL 750.159i(1), eight counts of forgery of a document affecting real property, MCL 750.248b, eight counts of uttering and publishing a document affecting real property, MCL 750.249b, and using false pretenses to obtain money in an amount of $1,000 or more, but less than $20,000 (false pretenses), MCL 750.218(4)(a). The two cases were consolidated for trial. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 25 to 45 years' imprisonment for each conviction.

-1-

For the reasons discussed below, we reverse defendant's convictions, dismiss the charges of forgery of a document affecting real property and uttering and publishing a document affecting real property, and remand for a new trial on the charges of conducting a criminal enterprise and false pretenses.

## I. FACTS

These cases arise from defendant's act of recording numerous quitclaim deeds on properties in the Detroit area in the summer of 2015. Defendant admitted that he located properties that he believed were abandoned, created quitclaim deeds transferring the properties either from himself or to one of his companies, Hardrick Investment Group, LLC and Paper Trail Incorporated, or vice versa, and recorded the quitclaim deeds with the Wayne County Register of Deeds. Defendant advertised the properties on Craig list and then attempted to sell several of the properties to several victims, claiming he was the owner. Defendant showed the victims the quit claim deeds he had prepared and filed with the Register of Deeds in order to convince them that he was the owner of the properties. Some of the victims paid defendant down payments on the properties, and defendant either prepared a land contract or a lease with an option to purchase purporting to transfer property interests to the victims. Some of the victims moved into the properties and made substantial improvements in them before discovering that defendant had no interests in the properties. Defendant worked with a woman named Latonia Fletcher,[1] whom he represented to the victims as being the person that does his paperwork. Defendant was arrested when his parole officer observed several deeds on defendant's kitchen table and, suspecting that defendant was operating a business contrary to the terms and conditions of his parole, reported to the police that defendant was violating his parole.

## I. LEGAL ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to support his conviction of conducting a criminal enterprise. Additionally, in his standard 4 brief, defendant argues that there was insufficient evidence to support his convictions for forgery of a document, uttering and publishing a document, and false pretenses.

In reviewing a challenge to the sufficiency of the evidence,[2] "this Court reviews the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006). "[C]ircumstantial evidence and

---

[1] The records indicate that Fletcher pled guilty to one count of forgery of a document affecting real property and one count of false pretenses, in relation to this case.

[2] We review de novo a challenge to the sufficiency of the evidence. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011).

reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Lee*, 243 Mich App 163, 167-168; 622 NW2d 71 (2000).

There was sufficient evidence to convict defendant of the offense of conducting a criminal enterprise. MCL 750.159i(1) provides that "[a] person employed by, or associated with, an enterprise shall not knowingly conduct or participate in the affairs of the enterprise directly or indirectly through a pattern of racketeering activity."[3] " 'Enterprise' includes an individual, sole proprietorship, partnership, corporation, limited liability company, trust, union, association, governmental unit, or other legal entity or a group of persons associated in fact although not a legal entity. Enterprise includes illicit as well as licit enterprises." MCL 750.159f(a). Racketeering is defined as "committing, attempting to commit, conspiring to commit, or aiding or abetting, soliciting, coercing, or intimidating a person to commit an offense for financial gain, involving" false pretenses or forgery and counterfeiting. MCL 750.159g. Therefore, to find defendant guilty of racketeering, the prosecution must prove beyond reasonable doubt that:

> (1) an enterprise existed, (2) defendant was employed by or associated with the enterprise, (3) defendant knowingly conducted or participated, directly or indirectly, in the affairs of the enterprise, (4) through a pattern of racketeering activity that consisted of the commission of at least two racketeering offenses that (a) had the same or substantially similar purpose, result, participant, victim, or method of commission, or were otherwise interrelated by distinguishing characteristics and are not isolated acts, (b) amounted to or posed a threat of continued criminal activity, and (c) were committed for financial gain. [*People v Martin*, 271 Mich App 280, 321; 721 NW2d 815 (2006).]

Defendant argues that he was not associated with any enterprise because neither Hardrick Investment Group, LLC, nor Paper Trail Incorporated was a separate and distinct entity from himself, and that Fletcher was not involved in the affairs of any enterprise. Hardrick Investment Group, as a limited liability company, and Paper Trail Incorporated, as a corporation, constituted "enterprises" under the statutory definition. MCL 750.159f(a). There was no evidence, however, that these companies involved anyone other than defendant himself. As this Court

---

[3] MCL 750.159f(c) defines "pattern of racketeering activity" as follows:

[N]ot less than 2 incidents of racketeering to which all of the following characteristics apply:

(*i*) The incidents have the same or a substantially similar purpose, result, participant, victim, or method of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated acts.

(*ii*) The incidents amount to or pose a threat of continued criminal activity.

(*iii*) At least 1 of the incidents occurred within this state on or after the effective date of the amendatory act that added this section, and the last of the incidents occurred within 10 years after the commission of any prior incident, excluding any period of imprisonment served by a person engaging in the racketeering activity.

stated in *People v Kloosterman*, 296 Mich App 636, 640; 823 NW2d 134 (2012), "defendant, acting alone, cannot be *both* the person and the enterprise."

Whether defendant's companies constitute separate and distinct entities, however, is not determinative because, contrary to defendant's claim, there was evidence that defendant worked with Fletcher in listing and selling the properties. There was testimony from the victims that Fletcher filled out the lease with option to purchase agreement, answered phone calls on behalf of defendant, referred to defendant as the owner of the properties, was present when one of the victims looked at a property, and that defendant represented that she did his paperwork. Even if Fletcher was not charged with any racketeering or conspiracy offenses, the jury could reasonably find that she knowingly assisted defendant based on her participation in the sales of the properties, as well as defendant's subsequent letters to her. Given that Fletcher was a separate and distinct individual from defendant, there was sufficient evidence that defendant associated with a criminal enterprise.[4]

We also hold that sufficient evidence was presented to convict defendant of the offense of false pretenses under MCL 750.218(4)(a), involving property valued at $1,000 or more, but less than $20,000. The elements of the crime of larceny by false pretenses over $100 are:

> (1) the defendant must have used a pretense or made a false statement relating to either past or then existing facts and circumstances, (2) at the time the pretense was used the defendant must have known it to be false, (3) at the time the pretense was used the defendant must have intended to defraud someone, (4) the accuser must have relied on the false pretense made by the defendant, (5) because of this reliance that person must have suffered the loss of some money or other valuable thing, and (6) the property obtained by the defendant must have had a fair market value of over $100 at the time of the crime. [*People v Lueth*, 253 Mich App 670, 680-681; 660 NW2d 322 (2002).]

Defendant does not dispute that he told the victims that he was the owner of the properties; rather, he denies making false pretenses and claims that he was the owner of the property based on his possessory and financial interests in the properties.

The evidence presented at trial, however, showed that defendant was not the owner of the properties. With regard to the three properties under which defendant was charged for this offense, the previous owners were JP Morgan Bank, M&T Bank, and Bank of America or Linda Greer, respectively, and there were no deeds transferring ownership from these owners to defendant. Consistent with this finding, the Department Executive of the Mortgage and Deed Fraud Unit for the Register of Deeds testified at trial that she did not discover deeds transferring

---

[4] Defendant does not expressly dispute that he and Fletcher associated on at least two racketeering offenses. Based on the testimony of two of the victims, there was evidence that defendant and Fletcher associated on two racketeering offenses, i.e., false pretenses. The conducting a criminal enterprise count included false pretenses regarding two of the properties at issue in this case.

any of the properties from the previous owners to defendant or his companies. This evidence was sufficient to enable the jury to find that when defendant told the victims that he was the owner, he made a false representation relating to an existing fact. Although defendant claimed he believed he was the owner, the jury could have reasonably found that defendant knew the representations to be false.

However, we find that there was insufficient evidence to support defendant's convictions for forgery under MCL 750.248b(1).[5] The elements of forgery under MCL 750.248(1), which proscribes forgery of certain public records, are: "(1) an act which results in the false making or alteration of an instrument (which makes an instrument appear to be what it is not); and (2) a concurrent intent to defraud or injure. The key is that the writing itself is a lie." *People v Johnson-El*, 299 Mich App 648, 651; 831 NW2d 478 (2013) (quotation marks and citations omitted).

Defendant disputes only the first element and argues that the quitclaim deeds were not falsely made. Specifically, defendant contends that the quit claim deeds were not a lie because they did not purport to be something they were not; rather, they were exactly what they purported to be—a conveyance of whatever interest defendant had in the properties from defendant to one of his companies or vice versa. We agree.

In *People v Susalla*, 392 Mich 387, 390; 220 NW2d 405 (1974), our Supreme Court held that "forgery includes any act which fraudulently makes an instrument purport to be what it is not." Here, the quit claim deeds, prepared by defendant, did not purport to be anything other than quitclaim deeds conveying whatever interest defendant had in the property to his company or vice versa. A quitclaim deed is defined as "[a] deed that conveys a grantor's complete interest or claim in certain real property but that neither warrants nor professes that the title is valid." *Black's Law Dictionary* (10th ed). Thus, the deeds only purported to convey whatever interest defendant or his company possessed, even if neither possessed any legal interest. Accordingly, the quitclaim deeds were not falsely made, and there was insufficient evidence to support defendant's convictions of forgery of a document affecting real property.

For the same reasons, we conclude that insufficient evidence was presented to convict defendant of uttering and publishing a document under MCL 750.249b(1).[6] The elements of the

---

[5] MCL 750.248b(1) provides:

> A person who falsely makes, alters, forges, or counterfeits a deed, a discharge of mortgage, or a power or letter of attorney or other document that affects an interest in real property with intent to injure or defraud another person is guilty of a felony punishable by imprisonment for not more than 14 years.

[6] MCL 750.249b(1) provides as follows:

A person who utters and publishes as true a false, forged, altered, or counterfeit deed or other document listed in section 248b knowing it to be false, forged, altered, or counterfeit with intent to injure or defraud is guilty of a felony punishable by imprisonment for not more than 14 years.

crime of uttering and publishing a forged instrument under MCL 750.249 are: "(1) knowledge on the part of the accused that the instrument was false; (2) an intent to defraud; and (3) presentation of the forged instrument for payment." *Johnson-El*, 299 Mich App at 652 (citations and quotations marks omitted). To "utter and publish a forged instrument is to declare or assert, directly or indirectly, by words or actions, that an instrument is good." *Id*. In the instant case, the prosecution failed to establish that the quitclaim deeds were false because they did not purport to be anything other than quitclaim deeds, transferring whatever interest defendant had in the properties from defendant to his company or vice versa.

## B. RIGHT TO SELF-REPRESENTATION

Defendant next argues that the trial court erred by denying his pretrial request for self-representation, and that this error requires reversal of his convictions even though the court later granted his mid-trial request for self-representation. We agree.[7]

"The right of self-representation is secured by both the Michigan Constitution, Const 1963, art 1, § 13, and by statute, MCL 763.1 . . . [and] is also implicitly guaranteed by the Sixth Amendment of the United States Constitution." *People v Dunigan*, 299 Mich App 579, 587; 831 NW2d 243 (2013). "Proper compliance with the waiver of counsel procedures . . . is a necessary antecedent to a judicial grant of the right to proceed in propria persona. Proper compliance requires that the court engage, on the record, in a methodical assessment of the wisdom of self-representation by the defendant." *People v Hicks*, 259 Mich App 518, 523; 675 NW2d 599 (2003) (internal quotation marks and citation omitted). Before granting a defendant's request for waiver of the right to counsel, a trial court must make findings as to three requirements:

> First, the request must be unequivocal. . . . Second, once the defendant has unequivocally declared his desire to proceed Pro se, the trial court must determine whether defendant is asserting his right knowingly, intelligently[,] and voluntarily. The trial court must make the Pro se defendant aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open. . . . Third and the final requirement is that the trial judge determine that the defendant's acting of his own counsel will not disrupt, unduly inconvenience and burden the court and the administration of the court's business. [*People v Anderson*, 398 Mich 361, 367-368; 247 NW2d 857 (1976).]

Further, MCR 6.005 provides as follows:

---

[7] "This Court reviews de novo whether a defendant waived his Sixth Amendment right to counsel, but reviews for clear error any factual findings underlying the trial court's decision. This Court also reviews de novo whether the trial court properly interpreted and applied the relevant statutes and court rules." *People v Campbell*, 316 Mich App 279, 283; 894 NW2d 72 (2016) (citations omitted).

(D) If the court determines that the defendant is financially unable to retain a lawyer, it must promptly appoint a lawyer and promptly notify the lawyer of the appointment. The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first;

(1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and

(2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

A trial court must substantially comply with the above requirements in order for the defendant to validly waive the right to counsel. *People v Willing*, 267 Mich App 208, 220; 704 NW2d 472 (2005). "[A] request for self-representation can only be denied for three reasons: (1) if it is untimely, ordinarily if made after trial has begun, (2) if there is sufficient certainty of serious obstructionist misconduct, or (3) if no valid waiver can be accomplished." *People v Richards*, 315 Mich App 564, 575; 891 NW2d 911 (2016).

The trial court did not substantially comply with the requirements of MCR 6.005(D) and *Anderson* before denying defendant's initial request to represent himself. The court did not discuss the requirements of the court rules or *Anderson* with defendant; rather, it invoked defendant's lack of legal knowledge as a ground for denying his request for self-representation. "[T]he defendant's technical legal knowledge is not relevant to the determination" of a knowing exercise of the right to self-representation." *Indiana v Edwards*, 554 US 164, 172; 128 S Ct 2379; 171 L Ed 2d 345 (2008). Thus, the trial court improperly denied defendant the right to self-representation on the basis of defendant's inability to show familiarity with criminal procedure and criminal law. The trial court's error constitutes a structural error requiring reversal. *People v Anderson (After Remand)*, 446 Mich 392, 405; 521 NW2d 538 (1994). Although the trial subsequently granted defendant's request for self-representation on the third day of trial, this did not remedy the error.

We also agree with defendant's argument that the denial of his request for self-representation prevented him from representing himself during jury selection. Our Supreme Court has recognized that "a defendant's right to self-representation encompasses certain specific core rights, including the right to be heard, to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at times." *People v Arthur*, 495 Mich 861, 862; 836 NW2d 694 (2013), citing *McKaskle v Wiggins*, 465 US 168, 174; 104 S Ct 944; 79 L Ed 2d 122 (1984).

Because the erroneous initial denial of defendant's request for self-representation prevented defendant from representing himself during voir dire and the questioning three witnesses, we reverse defendant's convictions and remand for a new trial.

## C. SCORING OF OFFENSE VARIABLE 9

Defendant argues that the trial court erred by assessing 25 points for offense variable (OV) 9 of the sentencing guidelines. Because we are reversing defendant's convictions and remanding for a new trial, it is unnecessary to address this sentencing issue.

## III. STANDARD 4 BRIEF

## A. MOTION FOR A NEW TRIAL OR DIRECTED VERDICT

In addition to his sufficiency of evidence arguments, defendant also argues that the trial court abused its discretion by refusing to rule on his motion for a new trial or directed verdict. We disagree.[8]

Defendant filed a motion for a new trial or directed verdict under MCR 6.419 and MCR 6.431. "Pursuant to MCR 6.431(B), [a] trial court may grant a new trial to a criminal defendant on the basis of any ground that would support reversal on appeal or because it believes that the verdict has resulted in a miscarriage of justice." *People v Dimambro*, 318 Mich App 204, 212; 897 NW2d 233 (2016) (citation and quotation marks omitted; alteration in original). "A motion for a new trial may be filed before the filing of a timely claim of appeal." MCR 6.431(A)(1). "After a jury verdict, the defendant may file an original or renewed motion for directed verdict of acquittal in the same manner as provided by MCR 6.431(A) for filing a motion for a new trial." MCR 6.419(C).

Defendant's motion for a new trial or directed verdict was filed on May 5, 2016, but the trial court refused to consider the motion at the sentencing hearing, stating that it was untimely. Defendant, however, did not file his claim of appeal until June 23, 2016. Therefore, the motion was timely filed. See MCR 6.431(A)(1); MCR 6.419(C). Nonetheless, there is no indication that defendant ever noticed the motion to be heard on May 5, 2016. At the hearing on that date, the trial court and the prosecutor stated that they had only received the motion that morning. MCR 2.119(E)(1) provides that "[c]ontested motions should be noticed for hearing at the time designated by the court for the hearing of motions."[9] Thus, the trial court did not abuse its

---

[8] "A trial court's decision on a motion for new trial is reviewed for an abuse of discretion, which occurs when the trial court renders a decision falling outside the range of principled decisions." *People v Dimambro*, 318 Mich App 204, 212; 897 NW2d 233 (2016) (citations and quotations marks omitted). This Court reviews a trial court's decision on a motion for a directed verdict de novo "to determine whether the evidence presented by the prosecutor, viewed in the light most favorable to the prosecutor, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt." *People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001).

[9] The rules of civil procedure apply to criminal cases unless "otherwise provided by rule or statute," "when it clearly appears that they apply to civils actions only," or" "when a statute or court rule provides a like or different procedure." MCR 6.001(D)(1)-(3).

discretion by refusing to consider the motion that day. There is no evidence that defendant ever subsequently noticed the motion for a hearing. Therefore, the trial court did not abuse its discretion by failing to consider it.

## B. SUBJECT-MATTER JURISDICTION

Finally, defendant argues that the trial court lacked jurisdiction over the subject matter of this case. We disagree.[10]

"Michigan circuit courts are courts of general jurisdiction and unquestionably have jurisdiction over felony cases." *People v Lown*, 488 Mich 242, 268; 794 NW2d 9 (2011). The trial court had subject-matter jurisdiction over defendant's case because his charges were felonies. See MCL 750.159j(1) (prescribing the penalties for a violation of MCL 750.159i); MCL 750.248b(1); MCL 750.249b(1); MCL 750.218(4)(a). Defendant argues that the subject matter was whether he had any ownership interest in the properties, and the question of ownership was a civil matter, which neither the trial court nor the jury had jurisdiction to decide. It was necessary for the jury to determine, however, whether defendant owned the properties in order to determine whether the elements of the charged crimes were proved beyond a reasonable doubt. Therefore, we reject this claim of error.

Accordingly, we reverse defendant's convictions, dismiss the charges of forgery of a document affecting real property and uttering and publishing a document affecting real property, and remand for a new trial on the charges of conducting a criminal enterprise and using false pretenses to obtain money in an amount of $1,000 or more, but less than $20,000. We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ David H. Sawyer
/s/ Douglas B. Shapiro

---

[10] This Court reviews de novo questions of law, such as whether a court has subject-matter jurisdiction. *People v Laws*, 218 Mich App 447, 451; 554 NW2d 586 (1996).