*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 19, 2020

Plaintiff-Appellee,

v

No. 345039
Macomb Circuit Court
LC No. 2017-001213-FC

PIERRE LAMAR TIPTON, JR.,

Defendant-Appellant.

Before: M. J. KELLY, P.J., and FORT HOOD and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of armed robbery, MCL 750.529, first-degree home invasion, MCL 750.110a(2), unlawful imprisonment, MCL 750.349b, two counts of larceny of a firearm, MCL 750.357b, and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1]  The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to prison terms of 30 to 60 years for the robbery conviction, 20 to 40 years for the home invasion conviction, 15 to 30 years for the unlawful imprisonment conviction, 5 to 10 years for each larceny conviction, and two years for each felony-firearm conviction.  We affirm.

Defendant's convictions arise from an offense that took place on the morning of February 6, 2017, in Clinton Township.  After the female victim took her children to school, she returned to her home and discovered a man, whom she identified as defendant, inside her kitchen. Defendant, who was armed with a knife, threatened to kill the victim, struck her in the face and the head, and pushed her to the floor.  Defendant took the victim throughout the house and ordered her to open a safe where some guns were stored.  Defendant took the guns, as well as cash, the victim's jewelry, and other items from the home.  After defendant left, the victim called the police.

---

[1] The jury acquitted defendant of an additional count of fourth-degree criminal sexual conduct, MCL 750.520e(1)(b).

-1-

A police tracking dog led the police to a nearby house where Deante Lewis lived and Keywan Scott had spent the night.

The police conducted on-the-scene identifications for both Lewis and Scott, but the victim denied that either person committed the offense. According to Lewis and Scott, defendant was at the house earlier that morning; he said he had robbed a woman and he showed them some handguns and jewelry that he had in his possession. While the police were speaking to Scott, Scott received a telephone call from defendant and activated the phone's speaker so the police could hear the call. During the call, defendant asked Scott if the police were at the house, which Scott confirmed. At that point, defendant hung up. Later, the victim was shown a photographic array and selected defendant as the person who committed the offense. The police also discovered that defendant sold some jewelry to a jeweler on February 7, 2017, and the victim identified the items as having been taken from her home. The police arrested defendant on February 9, 2017.

The defense theory at trial was that there was reasonable doubt whether defendant was the perpetrator of the charged offenses. During closing argument, defense counsel suggested that Lewis was the person who committed the offenses and defendant merely purchased the victim's jewelry from Lewis. The jury convicted defendant as described above, and defendant now appeals.

## I. ISSUES RAISED BY DEFENDANT'S COUNSEL

### A. SELF-REPRESENTATION

Defendant argues that his convictions must be reversed because the trial court erroneously refused to rule on his request for self-representation at a pretrial hearing on November 1, 2017. Because defendant never complained at that hearing or at any time thereafter that the trial court failed to rule on a proper request for self-representation, this issue is unpreserved. Therefore, our review of this issue is limited to plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999); *People v Campbell*, 316 Mich App 279, 283; 894 NW2d 72 (2016), overruled in part on other grounds by *People v Arnold*, 502 Mich 438 (2018).

Although the Sixth Amendment affords defendants the right to counsel, the Constitution does not force a lawyer upon a defendant and a defendant may choose to represent himself and waive representation in a criminal trial. *People v Williams*, 470 Mich 634, 641; 683 NW2d 597 (2004). In *Williams*, the Court explained:

> The right of self-representation under Michigan law is secured by Const 1963, art 1, § 13 and by statute, MCL 763.1. In [*People v*] *Anderson*, [398 Mich 361,] 367-368[; 247 NW2d 857 (1976)], this Court held that a trial court must make three findings before granting a defendant's waiver request. First, the waiver request must be unequivocal. Second, the trial court must be satisfied that the waiver is knowingly, intelligently, and voluntarily made. To this end, the trial court should inform the defendant of potential risks. Third, the trial court must be satisfied that the defendant will not disrupt, unduly inconvenience, and burden the court or the administration of court business. [*Williams*, 470 Mich at 642 (footnote omitted).]

"Waiver of the right to counsel . . . must be a 'knowing, intelligent ac[t] done with sufficient awareness of the relevant circumstances.' " *Id.* at 641-642, quoting *Brady v United States*, 397 US 742, 748; 90 S Ct 1463; 25 L Ed 2d 747 (1970). A trial court must also follow MCR 6.005(D) when considering a defendant's waiver of the right to counsel. *People v Russell*, 471 Mich 182, 190; 684 NW2d 745 (2004). Trial courts must substantially comply with the requirements in *Anderson*, 398 Mich at 367-368, and MCR 6.005(D). *People v Adkins (After Remand)*, 452 Mich 702, 726; 551 NW2d 108 (1996), overruled in part on other grounds by *Williams*, 470 Mich at 641 n 7. "Substantial compliance requires that the court discuss the substance of both *Anderson* and MCR 6.005(D) in a short colloquy with the defendant, and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures." *Adkins*, 452 Mich at 726-727.

Defendant's first appointed attorney was allowed to withdrew, in part, because defendant was filing pro se motions without counsel's consent. At that time, defendant declined to represent himself, but the trial court granted defendant's request for a new appointed attorney. At a pretrial hearing on November 1, 2017, defendant again attempted to argue some pro se motions he had filed, despite being represented by an attorney. During a discussion of those motions, the following exchange occurred:

> *THE COURT*: All right. Mr. Tipton, what did you want to say?
>
> *MR. TIPTON*: At this point, your Honor, I want to on Article I, section, 13, I'm taking my own case, your Honor.
>
> *THE COURT*: Well, at this point, you have an attorney that was just recently appointed.
>
> *MR. TIPTON*: Understandable.
>
> *THE COURT*: So. You're not going to be able to handle case [sic] from the inside, Mr. Tipton. You need to have an attorney that's not in custody that can obtain, review, deal with an—
>
> *MR. TIPTON*: I said that I don't need an attorney right now, Your Honor.
>
> *THE COURT*: I'm sorry.
>
> *MR. TIPTON*: I prefer to defend a suit in my own proper person, your Honor.
>
> *THE COURT*: Say that again.
>
> *MR. TIPTON*: I said that I would like to defend the suit in my own proper person. I'm not saying that I don't need an attorney. He can still file the motions that I need and file for right now in fairness to my own proper person, your Honor.
>
> *THE COURT*: I'm not sure what he's asking, Mr. Tomko.

*MR. TOMKO*:  I believe that Mr. Tipton had filed a motion, correct?

*MR. TIPTON*:  Yes.

*MR. TOMKO*:  He had filed appropriate papers and I'm going to invite him to explain what those were.

The court continued the hearing by addressing defendant's pro se motions:

*THE COURT*:  Well, I don't have a copy of any other motions.

*MR. TIPTON*:  Don't I have the right to be my own attorney, your Honor, on Article 1, Section 13?

*THE COURT*:  Article 1, Section 13 of what?  What are you referring to?

*MR. TIPTON*:  MCR, your Honor.

*THE COURT*:  Article 1 of—I don't know that the MCRs are written in articles.  They're in court rules.

*MR. TIPTON*:  It's the Constitution.

*THE COURT*:  Oh, you're talking about the Constitution?

*MR. TIPTON*:  Yeah.

*THE COURT*:  Sure, you have the right to have your own attorney.

*MR. TIPTON*:  That's what I'm here to do right now.

*THE COURT*:  You're ready to do that?

*MR. TIPTON*:  Yes, sir.

*THE COURT*:  Because I'm ready to deny the motions then.  We'll just go ahead and set this matter for trial.

Although defendant indicated at the hearing on November 1, 2017, that he wanted to represent himself, that request appeared to be for the purpose of arguing or pursuing his pro se motions.  He only stated that he did not need an attorney "right now," meaning at the time of the hearing.  Defendant did not unequivocally request that he be allowed to represent himself throughout the remainder of this case.  Indeed, he stated, "I'm not saying that I don't need an attorney."  Because courts must indulge every reasonable presumption against the waiver of the right to counsel, *Russell*, 471 Mich at 193, and because defendant's comments indicated that he was *not* saying that he did not need an attorney and he agreed that counsel could "still file the motions that [he] need[ed]," defendant did not make an unequivocal request to represent himself.  Therefore, the trial court did not err by failing to explicitly address the issue of self-representation.

-4-

## B. IDENTIFICATION

Defendant argues that the trial court erred by denying his motion to suppress the victim's identification of defendant at a photographic array. When reviewing a trial court's ruling on a motion to suppress evidence, we review the trial court's factual findings for clear error and review the underlying constitutional issues de novo. *People v Henry (After Remand)*, 305 Mich App 127, 160; 854 NW2d 114 (2014); *People v McDade*, 301 Mich App 343, 356; 836 NW2d 266 (2013). Clear error occurs when this Court is left with a definite and firm conviction that a mistake was made. *Id*.

Defendant moved to suppress the victim's identification on the ground that the police conducted an unduly suggestive photographic identification procedure. Defendant argues that the photographic array was impermissibly suggestive because the physical characteristics of the men in the other photographs were substantially different, causing his photograph to stand out from the others. He further argues that the identification procedure was conducted in a manner that made it impermissibly suggestive. After conducting an evidentiary hearing, the trial court found that the physical characteristics of the men in the photographs were only slightly different from defendant's appearance, and did not lead to a substantial likelihood of misidentification. The court also rejected defendant's argument that the circumstances surrounding the identification rendered it impermissibly suggestive. We find no error is these rulings.

A pretrial identification procedure can violate a defendant's right to due process if it is so impermissibly suggestive in light of the totality of the circumstances that it leads to a substantial likelihood of misidentification. *People v Kurylczyk*, 443 Mich 289, 302; 505 NW2d 528 (1993), overruled in part on other grounds by *People v Hickman*, 470 Mich 602 (2004). The burden is on the defendant to prove that an identification procedure is impermissibly suggestive. *Id*.

In *Kurylczyk*, 443 Mich at 304-306, our Supreme Court explained:

"Generally, the photo spread is not suggestive as long as it contains some photographs that are fairly representative of the defendant's physical features and thus sufficient to reasonably test the identification." Sobel, Eyewitness Identification, § 5.3(a), pp 5-9 to 5-10. Thus, differences in the composition of photographs, in the physical characteristics of the individuals photographed, or in the clothing worn by a defendant and the others pictured in a photographic lineup have been found not to render a lineup impermissibly suggestive.

However, a court will find that a witness' identification of a defendant was the product of an improper photographic identification if differences in the photographs led to a substantial likelihood of misidentification. In such cases, witnesses typically select a defendant on the basis of some external characteristic, rather than on the basis of the defendant's looks. For example, in *Commonwealth v Thornley*, 406 Mass 96; 546 NE2d 350 (1989), the defendant was the only man of thirteen men depicted in a photographic array who was wearing glasses. The court found that the array was impermissibly suggestive because the witnesses admitted selecting the photograph on the basis of the glasses.

-5-

Similarly, in *Henry v State*, 519 So 2d 84 (Fla App, 1988), the witness testified that a patch on the defendant's clothing was a factor in his selection of the defendant from the photographic array. The patch, combined with other factors, "created an unnecessarily suggestive identification procedure and so taints the lineup . . . as to give rise to a substantial likelihood of irreparable misidentification." 519 So 2d at 86. See also *State v Davis*, 176 W Va 454; 345 SE2d 549 (1986).

In analyzing defendant's claim, we do not question his contention that his photograph stood out from the others in a suggestive fashion. It is obvious from examining the photographs that defendant's photograph was distinct, particularly because he is wearing a trucker's wallet in the photograph. However, a suggestive lineup is not necessarily a constitutionally defective one. Rather, a suggestive lineup is improper only if under the totality of the circumstances there is a substantial likelihood of misidentification. *Lee*, *supra* at 626. The relevant inquiry, therefore, is not whether the lineup photograph was suggestive, but whether it was unduly suggestive in light of all of the circumstances surrounding the identification.

When examining the totality of the circumstances, courts look at a variety of factors to determine the likelihood of misidentification. Some of the relevant factors were outlined in *Neil v Biggers*, [409 US 188] at 199-200 [; 93 S Ct 375; 34 L Ed 2d 401 (1972)]:

> As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Applying these principles, the record does not support defendant's argument that the photographic identification procedure was unduly suggestive such that it created a substantial likelihood of misidentification.

Defendant points to distinctions between his physical characteristics and characteristics of the other men used in the array, but mere differences in physical characteristics of the individuals photographed do not render a lineup impermissibly suggestive. *Kurylczyk*, 443 Mich at 304. We disagree with defendant's contention that any differences between his physical characteristics and the physical characteristics of the other men photographed caused his photograph to stand out from the others. Each person photographed is African-American, their complexions are not significantly different, and they appear to be similar in age. At least four of the men have obvious facial hair and the other two men appear to have some form of facial stubble. While defendant had the most facial hair, that factor does not make his photograph stand out from the others on the basis of the victim's description of the suspect. The six men all have similar shaped eyes and noses. Defendant asserts that only he and one other participant had their hair in braids, but the victim explained that she never saw the suspect's hair because he was wearing a hoodie and he had his hood pulled up. Thus, any differences in the hair styles of the six men in the photographs

did not create a substantial likelihood of misidentification. Accordingly, the trial court did not err by finding that any differences in the physical characteristics of the men in the photographs did not render the array impermissibly suggestive. Rather, those differences affected only the weight of the victim's identification testimony, not its admissibility. *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002), superseded by statute in part on other grounds as stated in *People v Rodriguez*, 327 Mich App 573, 580-581; 935 NW2d 51 (2019).

Furthermore, although the victim acknowledged that there were differences in the physical characteristics of the men in the photographic array, she also testified that she formerly served as a military police officer and had received training to notice differences in physical characteristics of individuals to assist in making identifications. She further stated that she had several opportunities to view the suspect's face during the offense. She also provided a reasonably detailed description of the suspect, she viewed the photo array just a few hours after the offense, she identified several features of the suspect that led to her selection of defendant's photo, and she was generally certain of her identification.

Defendant also argues that the manner in which the police conducted the photographic identification procedure rendered it unduly suggestive. He argues that the police should have used "the preferred double-blind sequential procedure adopted by MCOLE[S]."[2] In *People v Blevins*, 314 Mich App 339, 350 n 4; 886 NW2d 456 (2016), this Court explained the meaning of "double-blind":

> "Double blind" is a scientific term referring to a manner of conducting a study in which neither the subjects *nor the experimenters* know which of multiple variables is which, generally accomplished by some kind of coding system and logged randomization that can be retrieved after the study is completed. The purpose of double-blind testing is, as defendant points out, to ensure that the experimenters' own perceptions and biases do not unconsciously affect the outcome of the test.

According to Lieutenant Eric Reincke—the officer who administered the photographic array—a double-blind procedure was utilized because neither he nor the victim knew which of the men photographed was the suspect. Although Detective Dan Quinn was also present and knew which photograph was defendant's, he did not participate in the identification procedure and there was no evidence that he said or did anything to indicate which photograph the victim should select, or to otherwise influence her selection.

Defendant primarily complains that the police presented all six photographs at the same time, rather than in sequential order, which is inconsistent with the preferred method advocated by MCOLES. Regardless of whether MCOLES supports a sequential method as the preferred method for conducting photographic arrays, the relevant inquiry for our purposes is whether the procedure used in this case was so impermissibly suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification. *Kurylczyk*, 443 Mich at 302. As discussed

---

[2] Michigan Commission on Law Enforcement Standards.

earlier, the record discloses that (1) any differences in the physical characteristics of the men in the photographs did not cause defendant's photo to stand out; (2) the victim had previously received training to notice differences in physical characteristics of individuals, she had several opportunities to view the suspect during the offense, she provided a reasonably detailed description of the suspect, she viewed the photo array just a few hours after the offense, she identified several features of the suspect that led to her selection of defendant's photo, and she was generally certain of her identification; and (3) neither the victim nor the officer who conducted the identification procedure knew which of the men photographed was the suspect, and there was no evidence that anyone else who was present said or did anything to influence the victim's selection of defendant's photograph. Considering the totality of these circumstances, there was no substantial likelihood of misidentification.

Defendant further suggests that the victim's identification should have been ruled inadmissible because the police did not record the identification procedure. Because recording is not constitutionally required and there is no other legal requirement that an identification procedure be recorded, we reject this claim of error.

In sum, the trial court did not err by denying defendant's motion to suppress the victim's identification of defendant.

## C. SENTENCING GUIDELINES

Defendant argues that he is entitled to resentencing because the trial court erroneously scored offense variable (OV) 7 and 8. We disagree.

When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.* A finding is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made. *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008).

The trial court scored the sentencing guidelines for armed robbery, which is a class A offense. MCL 777.16y. Defendant received a prior record variable (PRV) score of 85 points, which placed him in PRV Level F under the applicable sentencing grid. Defendant received a total OV score of 130 points, which placed him in OV Level VI (100+ points). MCL 777.62. These scores resulted in a guidelines range of 270 to 450 months or life, MCL 777.62, but because defendant was sentenced as a third-offense habitual offender, the upper limit of his range was increased by 50%, MCL 777.21(3)(b), resulting in an enhanced guidelines range of 270 to 675 months or life. The trial court sentenced defendant within that range, imposing a sentence of 30 to 60 years for the armed robbery conviction.

Defendant first argues that the trial court erroneously assessed 50 points for OV 7. We disagree. MCL 777.37(1) provides:

Offense variable 7 is aggravated physical abuse. Score offense variable 7 by determining which of the following apply and by assigning the number of points attributable to the 1 that has the highest number of points:

(a) A victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense ……………………………………. 50 points

(b) No victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense …………………………………… 0 points

The trial court appears to have relied on the language authorizing a 50-point score when a victim is treated with "similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense."

"[A]bsent an express statutory prohibition, courts may consider circumstances inherently present in the crime when scoring OV 7." *Hardy*, 494 Mich at 443. "The relevant inquiries are (1) whether the defendant engaged in conduct beyond the minimum required to commit the offense; and, if so, (2) whether the conduct was intended to make a victim's fear or anxiety greater by a considerable amount." *Id*. at 443-444 (footnote omitted).

In this case, the victim described being dragged around the house by defendant at knifepoint, being struck multiple times in the face and head, sometimes to the point that it knocked her to the ground, and defendant threatening to kill her several times as he held the knife. When the victim called her boyfriend to obtain the combination to the safe, defendant held the knife to the victim's neck and told her he would kill her if she sounded scared or said "anything stupid." The victim expressed that she feared being killed. Defendant also threatened to return and kill the victim when he left the house to keep her from immediately seeking help. Later, the police observed visible marks on her neck, and the record indicates that the victim received medical treatment for several lumps on her head. These facts support the trial court's finding that defendant engaged in egregious conduct beyond what was necessary to commit the offenses, and that the conduct was intended to considerably increase the victim's fear and anxiety during the offense. Accordingly, the trial court did not err by scoring OV 7 at 50 points.

Defendant also argues that the evidence did not support a score of 15 points for OV 8, which considers asportation or captivity. MCL 777.38(1)(a) provides that a score of 15 points is appropriate if "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." In *People v Barrera*, 500 Mich 14, 21; 892 NW2d 789 (2017), the Court stated that "[n]othing in the statute requires that the movement be greater than necessary to commit the sentencing offense, and we see no other basis for reading the statute as excluding the movement of a victim that is only incidental to that offense."

In this case, evidence at trial indicated that when defendant attempted to leave the house with the victim by going out the front door, he pulled the victim back inside, away from the view of neighbors who were outside the home. Moving a victim away from the presence or observation

of others qualifies as asporting the victim to a place or situation involving greater danger. *Id*. at 22. The trial court also found that defendant took steps to leave the house with the victim when he attempted to take her out the front door. Even if this involved only an unsuccessful attempt to place the victim in greater danger, it still involved defendant holding the victim captive for longer than necessary to commit the offense, thereby supporting a 15-point score for OV 8.

Even if the trial court erred by scoring OV 8, however, defendant would not be entitled to resentencing. A 15-point reduction would lower defendant's total OV score from 130 to 115 points, which would not affect his placement in OV Level VI (100+ points). MCL 777.62. Because any scoring error would not affect defendant's sentencing guidelines range, defendant would not be entitled to resentencing. *People v Francisco*, 474 Mich 82, 89-92; 711 NW2d 44 (2006).

## II. DEFENDANT'S STANDARD 4 BRIEF

In a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, defendant argues that he is entitled to a new trial because he did not receive the effective assistance of counsel. We disagree.

Because an evidentiary hearing was not held on this issue, our review is limited to errors apparent from the record. *People v Matuszak,* 263 Mich App 42, 48; 687 NW2d 342 (2004). To establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced defendant that he was denied the right to a fair trial. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). Defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *People v Tommolino,* 187 Mich App 14, 17; 466 NW2d 315 (1991). To establish prejudice, defendant must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *People v Johnson*, 451 Mich 115, 124; 545 NW2d 637 (1996). Defendant has the burden of demonstrating factual support for his ineffective-assistance claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Defendant argues that defense counsel was ineffective by failing to request the appointment of an expert witness on eyewitness identification testimony. In *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015), this Court stated:

> Decisions regarding whether to call or question a witness are presumed to be matters of trial strategy. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). Trial counsel's failure to a call a witness is only considered ineffective assistance if it deprived the defendant of a substantial defense. *Id*. A substantial defense is one that could have affected the outcome of the trial. See *People v Daniel*, 207 Mich App 47, 58; 523 NW2d 830 (1994). Likewise, decisions regarding what evidence to present, what evidence to highlight during closing argument, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). This Court will not "second-guess counsel on matters of trial strategy," nor will it "assess counsel's competence with the benefit of hindsight." *Russell*, 297 Mich App at 716.

The record discloses that defendant's first appointed attorney contemplated calling an expert on eyewitness identification. At a pretrial hearing, counsel identified one witness he was considering calling and further indicated that he intended to consult the State Appellate Defender Office regarding an identification expert. Counsel also indicated that based on his preliminary investigation of the issue, there were factors associated with this case that seemed to weigh against the value of an identification expert. These factors included the victim's background as a military police officer for which she had received training in identifying suspects, as well as the length of time the victim had to observe the suspect during the offense. While defendant was represented by a different attorney at trial, there is no apparent reason why defendant's trial attorney would not have had the benefit of the former counsel's investigation or views about the use and value of an expert witness. Given this record, defendant has not overcome the presumption that defense counsel duly considered the possibility of calling an identification expert and reasonably decided to forgo an expert as a matter of trial strategy because of its questionable, negligible, or even harmful value to the defense.

Furthermore, defendant has not provided any affidavit or other offer of proof showing what testimony an expert could have provided. Without an appropriate offer of proof, there is no basis for concluding that counsel's failure to call an expert deprived defendant of a substantial defense. In addition, because defendant has not demonstrated through an appropriate offer of proof that he has factual support for this ineffective-assistance claim, remand for an evidentiary hearing on this issue is not warranted. See *People v McMillan*, 213 Mich App 134, 141-142; 539 NW2d 553 (1995); *People v Simmons*, 140 Mich App 681, 685; 364 NW2d 783 (1985).

Affirmed.

/s/ Michael J. Kelly
/s/ Karen M. Fort Hood
/s/ Stephen L. Borrello