*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 4, 2022

Plaintiff-Appellee,

v

Nos. 358510; 358514
Wayne Circuit Court

SAMUEL DREALL CASTON,

LC No.   19-007628-01-FC;
               19-007627-01-FH

Defendant-Appellant.

Before:  SHAPIRO, P.J., and RICK and GARRETT, JJ.

PER CURIAM.

Samuel Caston appeals his bench trial convictions resulting from two shootings that targeted his former girlfriend.  In one incident, Caston fired a gun into her apartment, and in the other incident, Caston broke into her apartment, shot her in the leg, and physically assaulted her. Caston challenges the sufficiency of the evidence for his assault with intent to murder (AWIM) conviction, the scoring of the sentencing guidelines, and the validity of the waiver of his right to counsel.  For the reasons set forth in this opinion, we affirm.

## I.  FACTUAL BACKGROUND

This case arises from two incidents involving Caston and the victim, his former girlfriend. The first incident occurred on April 1, 2019 (the "April incident"), when Caston went to the victim's apartment.  The victim was preparing to take a bath and her infant child was also in the bathroom.[1]  The victim heard a noise at her door and went to her bedroom window to investigate. She observed Caston standing on the sidewalk with a gun in his hand.  As Caston moved his hand upward, the victim moved away from the window.  Caston fired the gun towards the bedroom window, and the bullet went through the window and the ceiling.

---

[1] Caston believes that he is the father of the child, although the victim testified that she did not know if Caston was the father.

The next incident occurred on September 8, 2019 (the "September incident"). Caston called the victim three times, demanding to see his child; the victim refused each time and hung up. Minutes later, Caston showed up uninvited at the victim's apartment and climbed to her second-floor balcony. Armed with a hammer, a handgun, an AK assault rifle, extra bullets, and a bulletproof vest, Caston used the hammer to break the sliding glass door and enter the victim's apartment. The victim, her cousin, and the victim's baby were inside. The cousin took the baby to hide in a walk-in closet. Caston shot the victim in the left thigh with the handgun. They physically fought and Caston hit the victim in the head with the handgun. He fired the gun one more time, but the bullet did not strike anyone. After that, Caston left the apartment and the victim was treated for her injuries.

Caston was arrested and charged for these incidents. Throughout the pretrial proceedings, Caston was argumentative with the trial court and generally dissatisfied with his three appointed attorneys. Caston made several requests to represent himself, which the trial court eventually granted. However, this request was rescinded at a pretrial hearing after Caston became disruptive in the courtroom. Several months later, Caston renewed his request to appear as a self-represented litigant, which the trial court, again, granted. Caston represented himself throughout most of his bench trial with standby counsel present, but the trial court rescinded his self-representation on the last day of trial when he became disruptive.

For the April incident, Caston was convicted of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84; felon in possession of a firearm (felon-in-possession), MCL 750.224f; domestic violence, MCL 750.81(2); and possession of a firearm during the commission of a felony, second offense (felony-firearm), MCL 750.227b. For these convictions, Caston was sentenced as a fourth-offense habitual offender, MCL 769.12, to 9 to 15 years' imprisonment for AWIGBH, 7 years and 6 months to 15 years' imprisonment for felon-in-possession, 93 days' imprisonment for domestic violence, and five years' imprisonment for second-offense felony firearm.

As for the September incident, the trial court found Caston guilty of AWIM, MCL 750.83; first-degree home invasion, MCL 750.110a(2); felon-in-possession; domestic violence; and two counts of second-offense felony firearm. For these convictions, Caston was sentenced as a fourth-offense habitual offender to 25 to 50 years' imprisonment for AWIM, 15 to 25 years' imprisonment for first-degree home invasion, 7 years and 6 months to 15 years' imprisonment for felon-in-possession, 93 days' imprisonment for domestic violence;[2] and five years' imprisonment for each felony-firearm conviction.

---

[2] For purposes of Caston's domestic violence convictions, the trial court found that Caston and the victim had a child in common. See MCL 750.81(2) ("[A]n individual who assaults . . . an individual with whom he or she has had a child in common . . . is guilty of a misdemeanor . . . .").

These consolidated appeals followed.[3] In Docket No. 358510, Caston appeals from the judgment of sentence related to the September incident. In Docket No. 358514, Caston appeals from the judgment of sentence related to the April incident.

## II. SUFFICIENCY OF THE EVIDENCE

Caston contends that there was insufficient evidence presented at his bench trial to support his AWIM conviction because he lacked the intent to murder.

We review claims of insufficient evidence de novo. *People v Kanaan*, 278 Mich App 594, 618; 751 NW2d 57 (2008). De novo review means that "we review the issues independently, with no required deference to the trial court." *People v Beck*, 504 Mich 605, 618; 939 NW2d 213 (2019). Due process requires the prosecutor to introduce evidence sufficient for a trier of fact to find the defendant guilty beyond a reasonable doubt. *Jackson v Virginia*, 443 US 307, 318; 99 S Ct 2781; 61 L Ed 2d 560 (1979); *People v Hampton*, 407 Mich 354, 368; 285 NW2d 284 (1979). When reviewing a sufficiency of the evidence claim, the question is "whether, after viewing the evidence in a light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 US at 319. The reviewing court "must defer to the fact-finder's role in determining the weight of the evidence and the credibility of the witnesses and must resolve conflicts in the evidence in favor of the prosecution." *People v Savage*, 327 Mich App 604, 614-615; 935 NW2d 69 (2019) (quotation marks and citation omitted).

To convict a defendant of AWIM, the prosecution must prove the following elements beyond a reasonable doubt: "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Ericksen*, 288 Mich App 192, 195-196; 793 NW2d 120 (2010) (quotation marks and citation omitted). This issue concerns the second element, whether Caston had the necessary intent to kill. "An actor's intent may be inferred from all of the facts and circumstances, and because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient." *People v Fetterley*, 229 Mich App 511, 517-518; 583 NW2d 199 (1998) (citation omitted). A fact-finder "may infer an intent to kill from the manner of use of a dangerous weapon." *People v Dumas*, 454 Mich 390, 403; 563 NW2d 31 (1997). And "injuries suffered by the victim may also be indicative of a defendant's intent." *People v Stevens*, 306 Mich App 620, 629; 858 NW2d 98 (2014).

In finding Caston had the requisite intent to kill the victim, the trial court reflected on the events of the September incident:

> You're not coming to scare someone only when you come strapped with an AK strapped to your back, a handgun with an extended magazine, break through the glass window with a hammer, come in and shoot [the victim] in the leg, and

---

[3] *People v Caston*, unpublished order of the Court of Appeals, entered September 15, 2021 (Docket Nos. 358510 and 358514).

then continue to fight with her as she's trying to fight him off and get him out, and then try to shoot her again, and then hits her in the head as well.

* * *

The fact that you change your mind later after you've already been attacking and shooting someone doesn't negate the fact that you had the intent to kill. So I do find him guilty of Assault with Intent to Murder.

Caston argues that he lacked the requisite intent because he chose not to kill the victim, even though he was able to do so. According to Caston, his intent was merely to scare the victim, but not to kill her. Viewing the evidence in a light most favorable to the prosecution, it was reasonable for the trial court, acting as fact-finder, to find that Caston had the requisite intent to kill.

Caston went to the victim's apartment on the morning of September 8, 2019, armed with a hammer, a handgun, an AK assault rifle strapped to his back, and extra bullets. He was also wearing a bulletproof vest. He climbed to the victim's second-floor balcony and used the hammer to break the sliding glass door, gaining access to the apartment. After the cousin and the child went to the closet, Caston stepped towards the victim and shot her in the leg. Caston and the victim were "tussling" and Caston shot the gun again, but the bullet did not hit anyone. Caston also "clocked" the victim in the head with his gun before leaving the apartment. Though Caston was unsuccessful in killing the victim, the evidence of Caston's conduct supported a finding that he had the requisite intent to kill. Caston possessed multiple dangerous weapons and firearm paraphernalia, broke into the victim's apartment, shot the victim in the leg, and fired his gun a second time while right next to the victim. Consequently, a fact-finder could reasonably infer that Caston intended to kill the victim during the September incident, and therefore sufficient evidence supported his AWIM conviction.

III. OV 9

Caston next argues that the trial court incorrectly scored Offense Variable (OV) 9, which involves the number of victims placed in physical harm, when it concluded that the child was a victim of the April incident, and the cousin and child were victims of the September incident.

Under the sentencing guidelines, we review the trial court's factual findings for clear error, and those findings must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "A finding is clearly erroneous if this Court is left with a definite and firm conviction that the trial court made a mistake." *People v Kimble*, 252 Mich App 269, 272; 651 NW2d 798 (2002). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438. The trial court may consider all record evidence when assessing points under the sentencing guidelines. *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). The court may also draw "reasonable inferences arising from the record evidence" to sustain the scoring of an offense variable. *People v Barnes*, 332 Mich App 494, 499; 957 NW2d 62 (2020) (quotation marks and

citation omitted). Caston preserved this guidelines-scoring challenge by raising the issue at sentencing. See MCL 769.34(10).

OV 9 accounts for the number of victims. MCL 777.39(1). 10 points are assessed if "[t]here were 2 to 9 victims who were placed in danger of physical injury or death . . . ." MCL 777.39(1)(c). MCL 777.39(2)(a) directs the sentencing court to "[c]ount each person who was placed in danger of physical injury or loss of life or property as a victim." OV 9 is scored by reference only to the defendant's conduct during the sentencing offense. *People v McGraw*, 484 Mich 120, 133-134; 771 NW2d 655 (2009).

At sentencing, the trial court scored OV 9 in both cases at 10 points, finding there were two or more victims at each incident. The trial court found there were two victims at the April incident that resulted in the AWIGBH conviction—the victim and the child. The court also found there were three victims at the September incident that resulted in the AWIM conviction—the victim, the cousin, and the child. Caston argued at sentencing that, for both incidents, OV 9 should be scored at zero points because Caston's conduct was only directed at the victim and only endangered her.

Beginning with the April incident, Caston contends that the victim was the only person standing in the window and the child, who was in the bathroom, was not in danger when he shot the gun through the victim's bedroom window. However, "close proximity to a physically threatening situation may suffice" to count an individual as a victim for purposes of OV 9. *People v Rodriguez*, 327 Mich App 573, 582; 935 NW2d 51 (2019) (quotation marks and citation omitted). "Because bullets can travel a very long distance, 'close proximity' to a physically threatening situation with a gun may be much more extensive than 'close proximity' to, say, a physically threatening situation with a knife." *People v Baskerville*, 333 Mich App 276, 294-295; 963 NW2d 620 (2020).

In *Baskerville*, 333 Mich App at 294-295, this Court held that the trial court erred by scoring OV 9 at 10 points where there was no evidence that a child in the home was in close proximity when the defendant shot the victim. There, the "defendant emerged from the back of the house, so the child would have been behind [the] defendant and thus not in any potential line of fire . . . ." *Id.* at 295.

Unlike in *Baskerville*, the evidence of the April incident supported the trial court's assessment that the child was a victim for purposes of OV 9. There was no evidence presented to suggest that the baby was "not in any potential line of fire." *Id.* Rather, the victim testified that after Caston fired into the apartment, she "creeped on the side to get out of [her] [bed]room back to [her] bathroom where [her] daughter was to make sure she was safe." And because Caston fired his gun from outside into the victim's apartment and through her bedroom window, the child could not have been behind Caston. The victim also testified about the layout of her apartment—a one-bedroom unit with the bathroom "towards the back" of the hallway where the victim's bedroom was located. Drawing reasonable inferences from the victim's statements and the size of the apartment, the child was in "close proximity" to the dangerous situation. Accordingly, the trial court did not clearly err by finding that OV 9 should be scored at 10 points for the April incident because the victim and her child were "placed in danger of physical injury or death" by Caston's conduct. MCL 777.39(1)(c).

As for the September incident, Caston argues that the victim's cousin and child were not in danger during the episode because they had "left and gone into another room" once Caston gained entry into the apartment. First, the evidence established that the cousin and child were present when Caston entered the apartment after dangerously shattering a glass door. The victim testified that once Caston was inside, he said to her, "[Y]ou thought I was playing when I told you I wanted to see my daughter." The victim "glanced back at [her] cousin and [her] daughter," looked at Caston, and told him, "[W]ell, you see her"—referring to the child. Therefore, the evidence supported that the child was in Caston's immediate line of sight once he broke into the apartment. Then, the cousin and child went to hide in the victim's walk-in closet, where they remained as Caston shot the victim in the leg, physically fought with her, and fired another bullet that ended up in the kitchen ceiling. The victim testified that much of this physical altercation occurred in the apartment hallway between the kitchen and bedroom. The walk-in closet was in one open room that served as the victim's living room and dining room, and the kitchen and bedroom were connected to this room by a small hallway. Given this evidence, it was reasonable to conclude that the child and cousin were in close proximity to the assault and shooting. Accordingly, the trial court did not clearly err by finding that OV 9 should be scored at 10 points for the September incident because the victim, her child, and her cousin were "placed in danger of physical injury or death" by Caston's conduct. MCL 777.39(1)(c).[4]

## IV. SELF-REPRESENTATION

Lastly, Caston argues that the trial court violated his due-process rights by allowing him to represent himself. According to Caston, he did not knowingly and voluntarily waive his right to counsel because the trial court failed to comply with MCR 6.005 and *People v Anderson*, 398 Mich 361, 367-368; 247 NW2d 857 (1976).

"The proper interpretation and application of a court rule is a question of law that is reviewed de novo." *People v Cole*, 491 Mich 325, 330; 817 NW2d 497 (2012). Likewise, we review de novo the entire record to determine whether a defendant has validly waived the right to counsel. *People v Williams*, 470 Mich 634, 640; 683 NW2d 597 (2004). Generally, this Court will not "disturb a trial court's factual findings regarding a knowing and intelligent waiver of Sixth Amendment rights unless that ruling is found to be clearly erroneous." *Id*. (quotation marks and citations omitted).[5]

---

[4] Even if we found OV 9 was improperly scored for the September incident, the error would not entitle Caston to resentencing because it would not alter his sentencing guidelines range. See *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006) ("Where a scoring error does not alter the appropriate guidelines range, resentencing is not required.").

[5] In the ordinary sense, Caston did not preserve his due-process challenge to the validity of his waiver because he did not object in the lower court, therefore limiting our review to plain error affecting substantial rights. See *People v Campbell*, 316 Mich App 279, 283; 894 NW2d 72 (2016), overruled on other grounds by *People v Arnold*, 502 Mich 438; 918 NW2d 164 (2018). However, we agree with another panel of our Court that holding Caston failed to preserve this

-6-

The Sixth Amendment of the United States Constitution, applicable to the states through the Due Process Clause of the Fourteenth Amendment, guarantees the right to counsel at all critical stages for a criminal defendant facing imprisonment. *Id*. at 641. The trial is "clearly a critical stage of the proceedings." *People v Russell*, 471 Mich 182, 188; 684 NW2d 745 (2004). The right to self-representation is also guaranteed under the Sixth Amendment, *Faretta v California*, 422 US 806, 819; 95 S Ct 2525; 45 L Ed 2d 562 (1975), and Article 1, § 13 of Michigan's 1963 Constitution, *Anderson*, 398 Mich at 366. Even so, in a case involving a self-represented defendant, the court may "appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Id*. at 834 n 46. Because "the right of self-representation and the right to counsel are mutually exclusive," a defendant who chooses to exercise his right of self-representation must validly waive his right to counsel. *Russell*, 471 Mich at 188-189.

In *Anderson*, 398 Mich at 367-368, our Supreme Court set forth three requirements that a trial court must follow before allowing a defendant to proceed without counsel. The court must find that "(1) the defendant's request is unequivocal, (2) the defendant is asserting his right knowingly, intelligently, and voluntarily through a colloquy advising the defendant of the dangers and disadvantages of self-representation, and (3) the defendant's self-representation will not disrupt, unduly inconvenience, and burden the court and the administration of the court's business." *Russell*, 471 Mich at 190, citing *Anderson*, 398 Mich at 367-368. A trial court must "indulge every reasonable presumption against waiver of the right to counsel." *Russell*, 471 Mich at 193.

Additionally, the trial court must comply with the dictates of MCR 6.005(D), which provides in relevant part:

> The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first
>
> > (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and
> >
> > (2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

A trial court's adherence to these requirements is viewed under a "substantial compliance" standard. *People v Adkins (After Remand)*, 452 Mich 702, 726; 551 NW2d 108 (1996), overruled in part on other grounds by *Williams*, 470 Mich 634. "Substantial compliance requires that the

---

issue "would be an endorsement of the illogical requirement that an unrepresented defendant object to the waiver of counsel he may have made unknowingly, unintelligently, or involuntarily." *People v Stewart*, unpublished per curiam opinion of the Court of Appeals, issued November 6, 2018 (Docket No. 338014), p 3. We need not squarely resolve this question because, as will be explained more fully, no error occurred under either standard of review.

court discuss the substance of both *Anderson* and MCR 6.005(D) in a short colloquy with the defendant, and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures." *Id*. at 726-727. "The presence of standby counsel does not legitimize a waiver-of-counsel inquiry that does not comport with legal standards," nor does it constitute "an exception to the *Anderson* or court rule requirements." *People v Lane*, 453 Mich 132, 138; 551 NW2d 382 (1996). "[I]f the trial court fails to substantially comply with the requirements in *Anderson* and the court rule, then the defendant has not effectively waived his Sixth Amendment right to the assistance of counsel." *Russell*, 471 Mich at 191-192.

After the defendant's initial waiver of the right to counsel, MCR 6.005(E) provides the advice that a trial court must give at subsequent proceedings:

> If a defendant has waived the assistance of a lawyer, the record of each subsequent proceeding (e.g., preliminary examination, arraignment, proceedings leading to possible revocation of youthful trainee status, hearings, trial or sentencing) need show only that the court advised the defendant of the continuing right to a lawyer's assistance (at public expense if the defendant is indigent) and that the defendant waived that right. Before the court begins such proceedings,
>
> > (1) the defendant must reaffirm that a lawyer's assistance is not wanted; or
>
> > (2) if the defendant requests a lawyer and is financially unable to retain one, the court must refer the defendant to the local indigent criminal defense system's appointing authority for the appointment of one; or
>
> > (3) if the defendant wants to retain a lawyer and has the financial ability to do so, the court must allow the defendant a reasonable opportunity to retain one.

Caston contends that the trial court erred by failing to expressly find at the bench trial that he knowingly and intelligently waived his right to counsel.

One of the first items of business during the first day of Caston's bench trial was the issue of Caston's self-representation. The trial court questioned Caston about his desire to represent himself:

> *The Court*: Mr. Caston, you are representing yourself today; is that correct?
>
> [*Caston*]: Yes.
>
> *The Court*: . . . In order to allow you to represent yourself, I'm going to go over all of the charges against you and the maximum penalty you face just to make sure you understand that.

The court went on to list each of the charges against Caston and their potential penalties, and Caston assured the trial court he understood the charges and maximum penalties that he faced. The waiver inquiry continued:

> *The Court*: You understand, sir, you are wishing to represent yourself, making sure that I follow our rules here. Um, and do you understand the risk involved in representing yourself? You are going to be held to the standards of an attorney.
>
> Do you understand that?
>
> [*Caston*]: Yes, I do.
>
> *The Court*: You have to follow the rules of evidence.
>
> [*Caston*]: Yes. I feel like everything is against me, vindictive through day one of the proceedings.
>
> *The Court*: Do you understand what's going on?
>
> [*Caston*]: Yeah, I will follow the rules if they follow the rules.
>
> *The Court*: Are the People satisfied with the rights to waiver of trial?
>
> [*Prosecutor*]: Yes.
>
> *The Court*: [Defense counsel] is here to follow along if you need any assistance. Do you understand that?
>
> [*Caston*]: Yes.
>
> *The Court*: Are you satisfied with his rights to waive counsel?
>
> [*Defense Counsel*]: Yes, Your Honor.
>
> *The Court*: Okay. Then we are ready to proceed with trial.

At the next two days of the bench trial, the trial court again asked whether Caston wanted to act as a self-represented litigant, which Caston affirmed. After receiving Caston's assurances that he wanted to represent himself, the trial court confirmed that Caston understood the nature of self-representation and advised him that he could use standby counsel. The trial court also listed the charges and potential penalties at the second and third day of the bench trial proceedings.

Caston argues his due-process rights were violated because the trial court never determined that he "knowingly and intelligently" relinquished his right to counsel at the bench trial. The substantial compliance rule requires a trial court to "make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures." *Russell*, 471 Mich at 191. The trial court never made any "express" finding that Caston "fully underst[ood],

recognize[d], and agree[d] to abide by the waiver of counsel procedures." *Id*. The question, then, is whether the trial court's failure to make this "express" finding at trial amounts to a denial of Caston's due-process rights.

Considering the nature of the trial court's oversight and the history of the proceedings, we do not find error amounting to a denial of Caston's due-process rights. "Where there is error but it is not one of complete omission of the court rule and *Anderson* requirements, reversal is not necessarily required." *People v Dennany*, 445 Mich 412, 439; 519 NW2d 128 (1994) (GRIFFIN, J.). Rather, whether "a particular departure justifies reversal will depend on the nature of the noncompliance." *Id*. (quotation marks and citation omitted). First, while the trial court made no *explicit* finding that Caston knowingly and intelligently waived his right to counsel, it is clear from the record that the trial court implicitly made such a finding. In accordance with MCR 6.005(D) and *Anderson*, Caston unequivocally affirmed his desire to proceed without counsel, and the trial court advised Caston of the charges against him and their associated maximum penalties, discussed the risks of self-representation, and reminded Caston of the presence of standby counsel. The trial court then asked the prosecutor and standby counsel if they were satisfied with Caston's rights to waive counsel, and after each attorney expressed their satisfaction, the court proceeded with trial. Although the trial court failed to expressly make its own finding that Caston waived his right to counsel, the court's colloquy with Caston and its consultation with counsel implies that the court was satisfied that Caston knowingly, intelligently, and voluntarily waived his right to counsel. At the very least, the trial court substantially complied with MCR 6.005(D) and *Anderson* by covering the elements necessary to effectuate a valid waiver. See *Adkins*, 452 Mich at 725 ("A particular court's method of inquiring into and satisfying these concepts is decidedly up to it, as long as the concepts in these requirements are covered.").[6]

Further, the history of the proceedings likely impacted the trial court's understanding of Caston's waiver. Almost from the very beginning of this case, Caston was adamant about his desire to represent himself. Though he was represented by several attorneys, Caston alleged that each was "ineffective," or that there was a breakdown of the attorney-client relationship. The topic of Caston's self-representation was present at most pretrial hearings. When it came time for Caston's trial, the trial court confirmed Caston's desire to represent himself, discussed the risks of that decision, and ensured that Caston understood he could use standby counsel for assistance at any time. The trial court also communicated to Caston the seriousness of the charges and their potential penalties, and that he would be expected to perform as an attorney in his own defense. Moreover, when it became apparent that Caston disrupted the court proceedings, the trial court rescinded his self-representation and appointed standby counsel as Caston's attorney for the short remainder of trial. This Court is charged with reviewing the whole of the record to determine whether an error exists. *Williams*, 470 Mich at 640. Though the trial court never made an "express" finding of waiver, there is no clear or plain error on the whole of this record given

---

[6] Because the bench trial was not Caston's initial waiver of his right to counsel, there is a reasonable argument that the requirements of MCR 6.005(D) did not even apply. However, given that any previous pretrial waiver did not follow the inquiry requirements set forth in MCR 6.005(D), we assume that the trial court properly determined that it needed to comply with that court rule in order to find a waiver of counsel at the bench trial.

Caston's persistent requests to represent himself, coupled with the trial court's substantial compliance with the court rules and efforts to ensure Caston understood the consequences of appearing as a self-represented litigant.

Next, Caston contends that the trial court violated the *Anderson* requirements by allowing him to continue to represent himself "once it became apparent that his attempts at self-representation were disrupting the proceedings." When considering a defendant's request to represent himself, the court should consider whether "the defendant's acting as his own counsel will not disrupt, unduly inconvenience and burden the court and the administration of the court's business." *Anderson*, 398 Mich at 368.

Aside from making the conclusory statement that he was "disrupting the proceedings," Caston neither offers examples nor explains the nature of his disruptiveness. In any event, the record is replete with examples of Caston disrupting court proceedings, and the trial court properly acted to rescind Caston's self-representation when his disruptive behavior persisted. Caston was often argumentative with the trial court and repeatedly raised moot issues that had been addressed at a motion hearing. He was also removed from the courtroom more than once for his behavior.

The issue, here, however, is whether Caston's *self-representation* would cause disruptiveness in the trial court. The trial court first granted Caston's request for self-representation at a January 2020 pretrial hearing. The trial court later rescinded this at a March 2020 hearing, stating that Caston could not "control himself in the courtroom" and that Caston was removed from the courtroom after "displaying verbally threatening behavior." Caston renewed his request for self-representation at a January 2021 hearing after his attorney assured the trial court that Caston was "much better" since he was released from pretrial custody and was "a different person than what [the trial court] saw in custody." As a result, the trial court allowed Caston to represent himself throughout nearly all of his bench trial in June and July 2021. The trial court rescinded Caston's ability to represent himself on the last day of the trial because he "became argumentative with the Court, and was speaking over the Court and the prosecutor, and basically refused to participate in the proceedings anymore."

While Caston caused several instances of disruptiveness, at the times he was granted his requests for self-representation, Caston assured the trial court he could maintain decorum in the courtroom. The trial court confirmed Caston's agreement to proceed appropriately in court. And when it was apparent Caston was disrupting the trial court's proceedings, the trial court rescinded Caston's self-representation. On this record, it appears the trial court reasonably balanced Caston's right to self-representation with the orderly process of justice. Moreover, Caston's disruptive behavior while self-represented did not cause substantial delays, given the trial court ensured standby counsel was always present and prepared to represent Caston if the need arose.

Accordingly, the trial court did not violate the third requirement of *Anderson* by allowing Caston to represent himself at the bench trial.[7]

Affirmed.

/s/ Douglas B. Shapiro
/s/ Michelle M. Rick
/s/ Kristina Robinson Garrett

---

[7] Caston does not appear to argue that any violations of his due-process rights occurred during the miscellaneous *pretrial* hearings in which he acted as a self-represented litigant. To the extent that Caston does raise such an argument, any noncompliance with MCR 6.005 or *Anderson* during the pretrial proceedings was harmless. See *People v Lewis*, 501 Mich 1, 12; 903 NW2d 816 (2017) (holding that deprivation of counsel at a preliminary examination is subject to harmless-error review). Caston was represented at the preliminary examination. And any preliminary proceedings in which he represented himself were largely routine status hearings that did not involve the presentation of evidence, consideration of motions, or other more consequential matters.